Gary Dee SPARKS, Appellant,

v.

The STATE of Texas, State.

No. 2–95–320–CR.

Court of Appeals of Texas,
Fort Worth.

March 20, 1997.

Rehearing Overruled April 24, 1997.

David Chapman, Jack W. Beech, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Chief of the Appellate Section, Anne E. Swenson, Ben Leonard, Reed O'Conner, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before CAYCE, C.J., and DAY and BRIGHAM, JJ.

## OPINION

DAY, Justice.

A jury found appellant Gary Dee Sparks guilty of driving while intoxicated ("DWI"). The trial court assessed his punishment at 90 days' confinement in jail, probated for two years, and a $450 fine. Sparks appeals and raises five points of error regarding the State's cross-examination of his expert witness. He argues that the trial court erred

by allowing the State to impeach the appellant's expert witness
- with prior inconsistent statements that were, in fact, not inconsistent;
- with inadmissible hearsay;
- on collateral matters;
- with specific instances of conduct; and
- with extrinsic proof of prior statements after the witness had admitted making the statements.

We affirm the judgment of the trial court.

### FACTS

In response to an anonymous complaint, an officer stopped Sparks for suspected DWI after he drove out of a restaurant parking lot and she observed him speeding and weaving. The officer noticed the smell of alcohol coming from inside the car and observed Sparks staggering so she administered field sobriety tests. Based on the officer's observation of Sparks's performance on the sobriety tests, she concluded he was intoxicated and arrested him for DWI. At the police station, the officer gave Sparks an intoxilyzer test using the Intoxilyzer 5000 model. The results indicated Sparks was intoxicated.

During trial, the technical supervisor over the intoxilyzer testified that the results of Sparks's intoxilyzer test were .120 and .118. He further testified about the operation of the Intoxilyzer 5000 model and was cross-examined extensively about the machine. Subsequently, Sparks called John Castle as an expert witness to dispute the reliability of Sparks's intoxilyzer test results.

Castle testified concerning what he considered to be several problems with the Intoxilyzer 5000 model. He testified that the test was influenced by asthma inhalers and sometimes by breath mints and was not equipped to deal with variances in acetone levels in different people's bodies. On cross-examination, the State asked Castle if he had testified in another case, *Lucido v. State*,[1] that substances other than those he had mentioned on direct examination could affect Intoxilyzer 5000 readings. He responded, "yes." Sparks then asked for a hearing out

---

1. The record reflects only the following information regarding this trial: *State of Texas v. Donald*

*James Lucido,* County Court at Law No. 3, Collin County, Texas.

the jury's presence complaining that the questioning was irrelevant. The jury was removed and a hearing began with the trial court instructing Sparks to save his objections to the end of the hearing.

At the hearing, the State asked Castle about his testimony in the *Lucido* trial. Castle admitted testifying that certain foods, chewing gum, and medications could affect Intoxilyzer 5000 results. The State then asked, and Castle admitted, that those substances were tested in Castle's presence during the Lucido trial and none affected the machine's results. Sparks objected, asserting that the statements were not inconsistent with Castle's testimony. Sparks then examined the witness. Castle explained more about his prior testimony concerning foods, chewing gum, and medications and stated that he had no control over the courtroom testing in *Lucido* and that he considered the tests unscientific.

The following day, before the jury returned, Sparks argued that the statements were inadmissible because they were not inconsistent, they were hearsay, and they constituted impeachment on a collateral matter. Accordingly, he objected under Texas Rules of Criminal Evidence 401, 402, 403, 609, and 612. *See* TEX.R.CRIM. EVID. 401–03, 609, 612. The State asserted the evidence was admissible under rule 612 as a prior inconsistent statement and that it should be permitted to show an expert witness's biases, prejudices, and motivation. *See* TEX.R.CRIM. EVID. 612 ("rule 612"). Castle returned to the stand and was examined further on the same issues. The trial court then overruled Sparks's objections and the jury returned.

After the jury's return, the State cross-examined Castle regarding his testimony in the *Lucido* trial about the effect of tomato juice, Choloraseptic, brown cider vinegar, Dentyne gum, Sucrets, Blistex, and Carmex on intoxilyzer tests. Castle responded in each instance that he had testified that these substances could affect the machine's results. The State then asked if these substances were tested in Castle's presence during the *Lucido* trial. Sparks objected that rule 612 prohibited the use of extrinsic evidence for impeachment when the witness admitted

making the statements, and the trial court overruled his objection. Castle admitted that the substances were tested in his presence and had no effect on the intoxilyzer test results. The essence of Sparks's appeal is that the trial court erred by allowing the State to impeach Castle's testimony in this manner.

### ADMISSION OF THE EVIDENCE

As an appellate court, we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim.App.1996); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). A reviewing court should not reverse a trial court whose ruling was within the "zone of reasonable disagreement." *Green*, 934 S.W.2d at 101–02; *Montgomery*, 810 S.W.2d at 391 (op. on reh'g).

### *Consistent Prior Statements*

■■■ Sparks's first point of error is that the trial court should not have allowed the State to impeach Castle with prior inconsistent statements that were not inconsistent. However, the prior statements of a witness need not always be inconsistent to be admissible. Under rule 612(b), prior statements of a witness are admissible to show "bias or interest, on the part of [the] witness" regardless of whether the statements are inconsistent. TEX.R.CRIM. EVID. 612(b). The credibility of a witness may be attacked by evidence that the witness is slanting his testimony against or in favor of a party as a result of personal interest or bias in the cause. *Willingham v. State*, 897 S.W.2d 351, 358 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995).

■■■ It is well established in civil law that experts may be impeached by questioning them regarding the number of times they have testified in lawsuits, payments for such testimony, and related questions. *Russell v. Young*, 452 S.W.2d 434, 436 (Tex.1970); *Olinger v. Curry*, 926 S.W.2d 832, 834 (Tex. App.—Fort Worth 1996, no writ). The extent to which such examination may be prolonged is a matter within the discretion of

the trial court. *Traders & General Ins. Co. v. Robinson*, 222 S.W.2d 266, 269 (Tex.Civ. App.—Texarkana 1949, writ ref'd); *see Russell*, 452 S.W.2d at 436. Rule 613(b) of the Texas Rules of Civil Evidence is identical to rule 612(b) of the Texas Rules of Criminal Evidence. *Compare* TEX.R. CIV. EVID. 613(b) *with* TEX.R.CRIM. EVID. 612(b). We find no reason to interpret them differently. If Castle had previously established a position on the reliability of intoxilyzer tests that he, as a paid professional, had a stake in maintaining, it was within the zone of the trial court's discretion to permit the State to offer evidence of that interest.

Rule 612(b) provides:

In impeaching a witness by proof of circumstances or statements showing bias or interest, on the part of such witness, and before further cross-examination concerning, or extrinsic evidence of, such bias or interest may be allowed, the circumstances supporting such claim or the details of such statement, ... must be made known to the witness, and the witness must be given an opportunity to explain or to deny such circumstances or statement.... If the witness unequivocally admits such bias or interest, *extrinsic* evidence of same shall not be admitted.

TEX.R.CRIM. EVID. 612(b) (emphasis added). The State complied with the requirements of rule 612(b) providing Castle with the circumstances supporting its claim, including the contents of his testimony and where, when, and to whom it was made. Moreover, after Castle admitted making the testimony, no *extrinsic* evidence of same was admitted.

We hold that even though the prior testimony was consistent with Castle's testimony in the present case, permitting the State to question Castle regarding the testimony in the *Lucido* case was within the scope of the trial court's discretion because the cross-examination was an attempt to show bias or interest on the part of the witness. Accordingly, we overrule Sparks's first point of error.

### Hearsay

■ Sparks's next point of error is that the trial court erred by allowing the State to impeach Castle with inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove *the truth of the matter asserted.*" TEX. R.CRIM. EVID. 801(d) (emphasis added). The State contends in its brief that this evidence was not offered for its truth. We agree. Statements offered simply to prove the fact that they were made and not to prove the substance of what was said are not objectionable as hearsay. *See Jones v. State*, 843 S.W.2d 487, 499 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993).

The evidence of Castle's testimony at the prior trial was admitted for the purpose of impeaching Castle's credibility as an expert by showing the jury that he made certain statements at another trial. Therefore, these statements are not hearsay, and the trial court was within its discretion in admitting the evidence. We overrule Sparks's second point of error.

### Impeachment on Collateral Matters

■ In his third point of error, Sparks contends that the trial court erred by permitting the State to impeach Castle on collateral matters. It is improper to impeach a witness on immaterial and collateral matters. *Gutierrez v. State*, 764 S.W.2d 796, 798 (Tex. Crim.App.1989); *McManus v. State*, 591 S.W.2d 505, 524 (Tex.Crim.App.1979). However, evidence showing a witness's bias or interest need be relevant only to prove that bias or interest. *Blair v. State*, 511 S.W.2d 277, 279 (Tex.Crim.App.1974); *Jackson v. State*, 482 S.W.2d 864, 868 (Tex.Crim.App. 1972); *cf. Casterline v. State*, 736 S.W.2d 207, 212 (Tex.App.—Corpus Christi 1987, pet. ref'd). When the purpose of cross-examination is to bring out facts that will convey to the jury attitudes, motives, and interests that may affect a witness's credibility, great latitude is allowed. *Jackson*, 482 S.W.2d at 867. The motives that operate on a witness's mind while testifying are not immaterial or collateral matters. *Koehler v. State*, 679 S.W.2d 6, 9 (Tex.Crim.App.1984); *Blair*, 511 S.W.2d at 279.

Thus, the trial court was within its discretion when it permitted the State to impeach Castle with this evidence. We overrule Sparks's third point of error.

### Specific Instances of Conduct

Sparks next maintains that the trial court erred when it allowed the State to impeach Castle with specific instances of conduct. Texas Rule of Criminal Evidence 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

Tex.R.Crim. Evid. 608(b). However, rule 612(b) clearly permits inquiry into "circumstances or statements" showing a witness's bias. Thus, the plain language of rule 612(b) creates an exception to rule 608(b) where the evidence shows bias or a motive for the witness to testify untruthfully. *See Thomas v. State*, 897 S.W.2d 539, 542 (Tex.App.—Fort Worth 1995, no pet.); *Murdock v. State*, 840 S.W.2d 558, 564–65 (Tex.App.—Texarkana 1992), *vacated in part on other grounds*, 845 S.W.2d 915 (Tex.Crim.App. 1993). A party may always attack a witness's credibility by cross-examination that tends to reveal biases, prejudices, or ulterior motives affecting the witness's testimony. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354 (1974); *Koehler*, 679 S.W.2d at 9. Accordingly, the trial court acted within its discretion when it allowed the State to conduct this cross-examination of Castle. We overrule Sparks's fourth point of error.

### Extrinsic Proof of Prior Statements

In his final point of error, Sparks argues that the trial court erred by allowing the State to impeach Castle with extrinsic proof of his prior statements after Castle admitted making the statements. Our review of the record shows no instance where the State offered extrinsic proof of Castle's statements. The State cross-examined Castle about his testimony and about events that he directly observed in the courtroom during the *Lucido* trial. It never sought to admit the Statement of Facts from the *Lucido* trial. In fact, it never offered any exhibits or called any witnesses to support or contradict Castle's testimony. Therefore, the trial court was within its discretion in permitting the disputed cross-examination. We overrule Sparks's final point of error.

### Conclusion

In summary, Castle's testimony need not have been inconsistent because it tended to show bias or interest on the part of the witness and was, thus, admissible under rule 612(b). Castle's testimony was not hearsay because it was not offered for the truth of the matter asserted. The motive operating on a witness's state of mind while testifying is not a collateral matter. When the evidence shows bias or a motive for the witness to testify untruthfully, there is an exception to the prohibition on cross-examination or extrinsic evidence concerning a witness's specific instances of conduct. And, the State offered no extrinsic proof of Castle's prior statements. Thus, we overrule all Sparks's points of error and affirm the judgment of the trial court.