TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00678-CR







Richard Lerma, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 7996, HONORABLE CLAYTON E. EVANS, JUDGE PRESIDING








 This appeal is taken from a conviction for the offense of aggravated assault on a public
servant, to wit: a police officer. Tex. Penal Code Ann. § 22.02 (West 1994). The jury found appellant
Richard Lerma guilty and assessed his punishment at 15 years' imprisonment and a fine of $10,000. The
jury also found that as alleged a deadly weapon had been used in the commission of the offense.


Points of Error


 Appellant advances eight points of error. In the first two points of error, appellant
challenges the legal and factual sufficiency of the evidence to sustain the conviction. In his third and fourth
points of error, appellant complains of the trial court's failure to charge on the lesser included offenses of
reckless conduct and assault. The fifth point of error claims that the trial court erred "egregiously" in failing
to give sua sponte the mandatory parole law jury instruction at the penalty stage of the trial. The sixth point
of error urges that the trial court erred in denying appellant the right to confront and cross-examine a
witness on matters tending to show personal bias and a motive to falsify. The last two points present the
contentions that appellant was denied the effective assistance of counsel under the federal and state
constitutions.


Facts


 On the afternoon of February 19, 1996, Sergeant-Investigator Brent Nichols of the 33rd
Judicial District Narcotics Enforcement Team received a telephone call from a confidential informant who
stated that appellant was taking orders for cocaine at various job sites in the Marble Falls area; that
appellant was on his way to Austin to purchase the cocaine and would bring the contraband back to the
Marble Falls area; that appellant would be driving a late model 70's blue Chevrolet Nova; and that he
would travel to and from Austin via Highways 71 and 281.

 Nichols passed the information received to Sergeant-Investigator James Semmler and
Sergeant Kevin Neal of the same agency. Semmler testified that he and Neal set up a surveillance at
Spicewood and that he changed into his uniform as an interdiction officer. Semmler explained that he had
known appellant about four years; that appellant had previously seen him (Semmler) in his interdiction
officer's uniform; and that appellant had seen him in the interdiction vehicle he was driving that night, a Ford
Crown Victoria. After an hour and a half at the Spicewood location, Semmler and Neal moved to the
intersection of Highways 71 and 281 where the lighting was better and set up their surveillance for the blue
Nova. Shortly thereafter, a vehicle exactly matching the description given and driven by an individual
appearing to be appellant passed the surveillance post and pulled onto Highway 281. Semmler and Neal
followed in the interdiction vehicle. Semmler observed that the Nova failed to maintain a single lane of
traffic and he knew that appellant never had obtained a driver's license. Taking this and the information
received into consideration, Semmler activated the emergency lights on his vehicle, but the Nova continued
on its way. It was not until Semmler turned on a siren that the Nova stopped.

 Semmler approached the Nova and identified himself as a narcotics officer and explained
the nature of the stop. Semmler recognized appellant as the Nova's driver and related that appellant
referred to him by his street name "Rambo." When appellant was asked to step out of the Nova, he asked
assistance in opening the jammed car door. As Semmler reached inside to open the door, he felt something
grab and pull him to the Nova as the Nova accelerated. Semmler was knocked off his feet and dragged
alongside the moving Nova for approximately 133 feet before he was able to free himself. As he fell to the
ground, the Nova drove over Semmler's left hand causing serious bodily injury to two fingers.

 Neal took Semmler to the hospital where he was treated and told that surgery would be
required. Dr. Robert Walters performed the surgery and described the injuries as constituting serious
bodily injury. The doctor related that the use of the two fingers would always be impaired and that
Semmler would suffer great discomfort in the left hand in cold weather.

 The Nova was found abandoned in Marble Falls. It did have a jammed door on the
driver's side.

 Dawn Hensley testified that at the time she was living with Paul Castillo in his mother's
house in Marble Falls. Castillo was appellant's cousin. On the morning of February 20, 1996, she
observed a "narcotics car" outside the house and later learned from a visitor that the police were looking
for appellant. Still later, Henley went to a back bedroom where she encountered appellant and Jane Rios,
Paul's sister. Upon inquiry as to why the police were looking for him, appellant told Hensley that he had
run "over Rambo the night before" when he had some cocaine and Semmler stopped him. Hensley was
acquainted with "Rambo." Shortly thereafter, Hensley left for a store where she first tried to reach
Semmler by telephone but eventually talked to another narcotics officer.

 Ronald Ray James, the officer who booked appellant into jail on February 20th, testified,
without objection, that he heard part of a telephone conversation when appellant used the phone in the
booking area. He heard appellant say that "Rambo put, put his arm in the window and then I stomped the
gas."

 Appellant's mother, Magdalena Lerma, testified that appellant had telephoned her from jail
after his arrest; that he had attempted to explain to her why he was under arrest; and that he informed her
the authorities were claiming that when Semmler put his hand inside the car window that he (appellant) had
"stomped the gas." Jane Rios also testified for the defense. She denied that Hensley had a conversation
with appellant in her presence on February 20, 1996.

 Appellant testified that on February 19, 1996, he had taken his friend, Rueben, to Austin. 
He did not know Rueben's last name. On his return as he neared Marble Falls, he saw a vehicle behind
him flashing "long lights" off and on. He did not see any red or blue lights or hear a siren. As appellant
stopped his vehicle without turning off the engine, someone got out of the car behind him and ran up to his
vehicle with a gun and a flashlight. The individual yelled at appellant to get "the hell out of the car" or that
he would be killed. The individual did not identify himself and appellant did not recognize him. It appeared
that the individual was wearing a red and white T-shirt. Appellant tried but could not open the car door. 
When the individual placed the flashlight under his arm and lowered the gun and "went to grab the door,"
appellant accelerated in an attempt to get away. He was scared and felt his life was threatened. Appellant
swerved his vehicle to the right to avoid the individual and then headed towards the roadway. He observed
someone running next to his vehicle and lunge toward the car, but he reached the paved road and
proceeded to Marble Falls.

 Appellant did not believe the person who approached him was a peace officer. He knew
Semmler and had "run-ins" with him on several occasions, but did not recognize him on the night in
question. Appellant described the individual as standing straight with the flashlight in appellant's face.

 Appellant parked the Nova vehicle behind a friend's house in Marble Falls and hid in a
chicken coop. About 8:30 a.m. the next morning, appellant went to his sister's house and learned that the
police had been there looking for him. He went to his aunt's house and contacted his cousin, Jane. He
denied seeing Dawn Hensley there or having any conversation with her at all. He did acknowledge,
however, that about 11:00 a.m. Dawn had asked if anyone wanted any drinks from the store and that he
declined. Appellant admitted that he telephoned his mother from the jail and in explaining to her the charges
against him had used the expression "stomped the gas."

Legal Sufficiency


 The standard for reviewing the legal sufficiency of evidence is whether, viewing the
evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond
a reasonable doubt the essential elements of the offense charged. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Skillern v. State, 890 S.W.2d 849, 879 (Tex. App.--Austin 1994, pet. ref'd). The standard of
review is the same in both direct and circumstantial evidence cases. Green v. State, 840 S.W.2d 394,
401 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 1020 (1993); Geesa v. State, 820 S.W.2d 154,
155 (Tex. Crim. App. 1990). In our review of the legal sufficiency of the evidence, we must consider all
the evidence which the jury was permitted, properly or improperly, to consider. Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993), cert. denied, U.S. , 114 S. Ct. 1579 (1994);
Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). The jury charge submitted both
counts of the indictment, each charging aggravated assault on a public servant. The first count charged the
offense under section 22.02(a)(1), (2), (b)(1), (2) of the Texas Penal Code, and the second count charged
the offense under section 22.02(a)(2), (b)(1), (2). The jury returned a general verdict. See Kitchens v.
State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

 The jury is the exclusive judge of the facts proved and the weight to be given to the
testimony. It is the judge of the credibility for the witnesses. See Tex Code Crim. Proc. Ann. art. 38.04
(West 1979); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Saxton v. State, 804
S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury is free to accept or reject any or all of the evidence
presented by either party. Saxton, 804 S.W.2d at 914; Beardsley v. State, 739 S.W.2d 681, 684 (Tex.
Crim. App. 1987). The reconciliation of evidentiary conflicts is solely within the province of the jury. 
Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The jury may believe a witness even
though that witness's testimony has been contradicted. Wawrykow v. State, 866 S.W.2d 87, 89 (Tex.
App.--Beaumont 1993, pet. ref'd).

 With this background, we turn to appellant's specific contention that the evidence is legally
insufficient because it failed to establish beyond a reasonable doubt that Officer Semmler, the alleged public
servant, was lawfully discharging an official duty at the time of the alleged assault. Both counts of the
indictment alleged in part that Semmler was "a person that the defendant knew was a public servant who
was lawfully discharging an official duty to wit: a peace officer investigating the said defendant for alleged
narcotics trafficking." Appellant argues that there was no probable cause to stop or arrest and, short of
probable cause, there was no basis for an investigation stop or detention under Terry v. Ohio, 392 U.S.
1 (1968). Appellant takes the position that while Semmler was a peace officer and a public servant, the
conviction cannot stand because Semmler made a misjudgment as to probable cause or as to the basis for
an investigative stop under Terry, hence, he was not discharging an official duty as alleged. Appellant
contends that the proof falls short because Semmler was involved in an unconstitutional or illegal arrest,
stop, or detention at the time of the offense in question. No issue was raised at trial as to the legality of the
stop or detention and no ruling thereon was made. No jury charge was requested and no objection made
to the court's jury charge on this issue. The undisputed evidence shows that Semmler was acting in his
capacity as a peace officer at the time in question.

 The case law is directly contrary to appellant's contention. Whether an officer was making
a lawful arrest, stop, or detention is not relevant in determining if the officer was acting in the lawful
discharge of his official duties. A peace officer is still acting within the lawful discharge of his official duties
when he makes an unlawful arrest, stop, or detention so long as he is acting within his capacity as a peace
officer. See Hughes v. State, 897 S.W.2d 285, 297-98 (Tex. Crim. App. 1994); Guerra v. State, 771
S.W.2d 456, 460-61 (Tex. Crim. App. 1988), cert. denied, 492 U.S. 925 (1989); Montoya v. State,
744 S.W.2d 15, 29-30 (Tex. Crim. App. 1987), cert. denied, 487 U.S. 1227 (1988) (citing Gonzales
v. State, 574 S.W.2d 135, 137 (Tex. Crim. App 1978)); Salazar v. State, 643 S.W.2d 953, 956 (Tex.
Crim. App. 1983) (an aggravated assault upon a peace officer conviction does not depend on whether the
arrest was legal or defendant's belief about its legality); Evans v. State, 876 S.W.2d 459, 463 (Tex.
App.--Texarkana 1994, no pet.).

 Everything in the record points to the fact that Semmler was clearly engaged in his "official
duty" and a rational trier of fact could have so found beyond a reasonable doubt. Guerra, 771 S.W.2d
at 462; Moreno v. State, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). Moreover, we conclude that
the stop in question was constitutional and legal based on the appellate record. The first point of error is
overruled.

Factual Sufficiency


 In his second point of error, appellant challenges the factual sufficiency of the evidence. 
Factual and legal sufficiency questions are decided by different standards of review. Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). In evaluating a factual sufficiency question, the appellate court
begins with the presumption that the evidence is legally sufficient to support the conviction. Id. at 134. The
proper standard of review for factual sufficiency of the elements of the offense requires that we view the
evidence without the prism of "in the light most favorable to the prosecution" and we set aside the verdict
or judgment only if it is so contrary to the overwhelming weight of the evidence to be clearly wrong and
manifestly unjust. Id. at 129; see also Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992,
pet. ref'd untimely filed).

 Appellant briefed the factual sufficiency issue together with the legal sufficiency issue and
raised the same contention as in the first point of error. He cited only "Meraz v. State, 785 S.W.2d 146
(Tex. Crim. App. 1990)," a pre-Clewis case. Appellant failed to discuss how the application of the Stone
-Clewis standard would entitle him to the relief he seeks. Considering the evidence already detailed and
the defensive issues and applying the factual sufficiency standard, we conclude that the jury's verdict is not
so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. The
second point of error is overruled.


Lesser Included Offenses



 In points of error three and four, appellant contends that the trial court erred in failing to
charge on the lesser included offenses of reckless conduct and assault at the guilt/innocence phase of the
trial despite timely objections and requests.

 The two-pronged test for determining whether a jury must be charged on a lesser included
offense has frequently been denominated the "Royster-Aguilar" test. See Aguilar v. State, 682 S.W.2d
556, 558 (Tex. Crim. App. 1985); Royster v. State, 622 S.W.2d 442, 447 (Tex. Crim. App. 1981). The
test was slightly modified in Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). The two
prongs of the test that now must be satisfied are: (1) the lesser included offense must be included within
the proof necessary to establish the offense charged, and (2) some evidence must exist in the record that
would permit the jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. 
Id.; see also Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). In applying the two-pronged
test, the trial court should make a determination as to whether the evidence of the lesser offense would be
sufficient for a jury rationally to find that the defendant is guilty only of that offense and "not the greater
offense." Rousseau, 855 S.W.2d at 673; Ybarra v. State, 890 S.W.2d 98, 108 (Tex. App.--San
Antonio 1994, pet. ref'd). In making the determination of entitlement to a charge on a lesser-included
offense, all the evidence at trial should be reviewed. Bignall, 887 S.W.2d at 23; Havard v. State, 800
S.W.2d 195, 216 (Tex. Crim. App. 1989) (op. on reh'g).

 Assault is a lesser-included offense of aggravated assault. Tex. Penal Code Ann.
§ 22.02(a) (West 1994). Thus, the first prong of the test is met as to assault. There is, however, no longer
an offense known as "reckless conduct." The offense which replaced "reckless conduct" is "deadly
conduct." See Tex. Penal Code Ann. § 20.05 (West 1994), effective September 1, 1994. Act of May
29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3623-24. This enactment
amended the Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 920 (former
section 20.05). The 1993 amendment left subsection (a) of the former statute intact (a person commits an
offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury). 
It clearly made other changes. (1)

 Appellant, in urging the trial court to charge the jury on "reckless conduct," made no
mention of section 20.05 (deadly conduct) in effect at the time of the commission of the offense alleged. 
He continues on appeal to insist that error was committed in failing to charge on a non-existent offense. 
He makes no claim that the current version of section 22.05(a) meets the first prong of the required test. 
Whether the first prong of the test with regard to "reckless conduct" was met becomes immaterial in view
of our discussion below.

 We conclude that there is not any evidence in the record which would permit a jury
rationally to find that if appellant was guilty, he was guilty only of assault or "reckless conduct," and not the
greater offense. The second prong of the Royster-Aguilar test was not met. If a defendant either presents
evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing
that he is guilty only of a lesser-included offense, then a charge on a lesser-included offense is not required. 
See Bignall, 887 S.W.2d at 24 (quoting Aguilar, 682 S.W.2d at 558); Fraga v. State, 940 S.W.2d 736,
738 (Tex App.--San Antonio 1997, pet. ref'd).

 In the instant case, the State's evidence established the commission of the offense alleged. 
Appellant denied the commission of the offense alleged and did not admit he committed lesser-included
offenses. His defensive theory was that he fled in fear from an unknown assailant wearing a red and white
shirt who threatened him after stopping him on the highway, and that he committed no offense at all. The
trial court did not err in refusing to submit instructions on the lesser-included offenses as claimed. The third
and fourth points of error are overruled.


Limitation on Cross-Examination


 We next consider, out of order, the sixth point of error, in which appellant contends that
the "trial court erred by denying appellant the opportunity to confront and cross-examine a witness on
matters to show personal bias and a motive to falsify." Dawn Hensley was the State's witness who testified
that the morning after the alleged incident appellant told her he had been carrying cocaine and had "run over
Rambo." She telephoned the police, first trying to reach Officer Semmler.

 The trial court granted the State's motion in limine to prohibit any interrogation of a witness
about specific instances of conduct that had not resulted in a final conviction. See Tex. R. Crim. Evid. 608,
609. Prior to Hensley's testimony in the State's case-in-chief, appellant challenged the ruling on the motion
in limine in order to show Hensley's bias, interest, and prejudice for the purpose of impeachment and to
perfect a bill of exception.

 In the absence of the jury, Hensley testified that at the time of her encounter with appellant,
she was on probation, (2) and that the probation expired shortly before her testimony but had not been
formally terminated. Without giving dates, Hensley admitted that she had been arrested by Officer Semmler
on two cases of delivery of methamphetamine. She was released from jail when she agreed to be an
informant for Semmler. She informed on two individuals and had completed her "obligation" to Semmler
some three or four months before her encounter with appellant on February 20, 1996. Hensley believed
that the charges against her had been dropped but she was not sure. Her probation officer told her that
if she completed her probation without being indicted she most likely would not be indicted. Hensley stated
that she acted of her free will in reporting appellant and that no one had threatened or caused her to testify
against appellant. At the conclusion of the one-witness hearing, the trial court ruled that appellant could
show that Hensley was on probation but nothing more for the purpose of impeachment.

 Rule 608(b) of the Texas Rules of Criminal Evidence provides that specific instances of
conduct of a witness for the purposes of attacking or supporting his or her credibility may not be inquired
into on cross-examination of the witness nor proved by extrinsic evidence other than conviction of a crime
as provided in Rule 609. It has been said that Rule 608(b) is very restrictive and allows for no exceptions. 
Ramirez v. State, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990). Nevertheless, constitutional
considerations often become of some import in this context. See Moody v State, 827 S.W.2d 875, 891
(Tex. Crim. App. 1992); Sparks v. State, 943 S.W.2d 513, 517 (Tex. App.--Fort Worth 1997, pet.
ref'd).

 The right to confrontation by cross-examination is a fundamental constitutional right. Shelby
v. State, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991). As a part of the sixth amendment right to
confrontation, (3) a defendant must be accorded great latitude to show any fact that would tend to establish
ill feeling, interest, bias, prejudice, or ulterior motives affecting the witness's testimony. Davis v. Alaska,
415 U.S. 308, 316-17 (1974); Hurd v. State, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987); Sparks,
943 S.W.2d at 517; Gonzales v. State, 929 S.W.2d 546, 547 (Tex. App.--Austin 1996, pet. ref'd).

 Our rules of criminal evidence expressly recognize the right to impeach a witness by proof
of circumstances or statements showing bias or interest on the part of the witness. Tex. R. Crim. Evid.
612(b). (4) The constitutional right of confrontation is violated when appropriate cross-examination is limited. 
Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). A defendant is entitled to pursue all
avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness
to testify. Id. (citing Lewis v. State, 815 S.W.2d 560, 565 (Tex. Crim. App. 1991)).

 Although appellant was able to show that Hensley was on probation, the trial court
prevented appellant's attempt to inform the jury that Hensley had a vulnerable relationship with the State
at the time of the trial. Carroll, 916 S.W.2d 501. Appellant's proposed cross-examination was not an
inquiry into a specific instance of conduct but focused on Hensley's possible motive or interest in testifying
for the State. Appellant was not able to show that Hensley had been a narcotic informer for the victim-officer and was not sure whether she still could be tried for the offenses which she believed Semmler was
to "drop." We tend to agree that the trial court erred in limiting Hensley's cross-examination.

 We conclude, however, that the error, if any, was harmless. Delaware v. Van Arsdall,
475 U.S. 673, 682 (1986), sets forth the proper analysis for determining whether a limitation of cross-examination is harmful. See also Carroll, 916 S.W.2d at 497. First, the reviewing court must assume the
damaging potential of the cross-examination was fully realized. Second, with that assumption in mind, the
error is reviewed in light of the following factors: (1) the importance of the witness's testimony in the
prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence
corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. Finally, the
reviewing court determines whether the error was harmless beyond a reasonable doubt. Van Arsdall, 475
U.S. at 684; Shelby, 819 S.W.2d at 547.

 To perform the analysis, we will review the record. We first assume the jury heard
appellant's interrogation of Hensley as to her becoming an informant for Semmler, as a result of charges
pending against her, the dropping of the charges, and so forth. Next, we consider the five factors of the
second prong. Hensley's testimony was important to the State's case but not essential. Without her
testimony, appellant's conviction would still be supported by sufficient evidence. Hensley's testimony was
somewhat cumulative of Officer James who heard appellant talking on the telephone at the jail. Appellant
and Jane Rios flatly contradicted the fact that Hensley had the damaging conversation with appellant. 
Semmler and Neal and appellant all testified that appellant was present at the time of the offense, but their
versions differed. Hensley's testimony as to appellant's remarks tended to corroborate Semmler's version
that appellant recognized him at the scene. Appellant's cross-examination of Hensley was not limited
except as mentioned. He was able to show that Hensley was on probation at the time. The overall strength
of the State's case was extremely strong. After reviewing the entire record, we conclude the limitation of
the cross-examination was harmless error beyond reasonable doubt and did not contribute to the conviction
or punishment. See Tex. R. App. P. 44.2(a) (pertaining to constitutional error). The sixth point of error
is overruled.


Parole Law Jury Instruction


 In the fifth point of error, appellant urges that the "trial court erred egregiously by failing to
give the mandatory parole law instruction in the charge to the jury on punishment." See Tex. Code Crim.
Proc. Ann. art. 37.07, § 4(a) (West Supp. 1998). When the proposed charge was submitted to
appellant's counsel prior to the penalty stage of the trial, he expressly stated "no objections." After that
phase of the trial was completed, counsel was again given an opportunity to study the proposed jury charge
which contained no instructions on the parole law. No objections were offered to the charge.

 During the deliberations, the jury submitted a note to the trial court asking three questions,
the first of which read: "1. When is parole eligibility on various yrs. 5 - 10 - 15 - 20 yrs." Appellant's
counsel suggested that the trial court instruct the jury that the law did not permit the court to answer any
of the questions. The trial court responded: "That's it. I like that. . . ." The prosecutor suggested a
reference to the original jury charge. The trial court then answered the jury's note: "The law does not
permit me to answer your question [sic]. Please refer to the charge and continue your deliberations." 
There was no objection to the court's answer.

 Appellant urges that the instant non-capital felony case falls within the mandatory provisions
of article 37.07, section 4(a), and that the statute requires the instruction to be given ("shall charge the jury
in writing"); see Nixon v. State, 940 S.W.2d 687, 691 (Tex. App.--El Paso 1996, pet. ref'd); Higgins
v. State, 924 S.W.2d 739, 743 (Tex. App.--Texarkana 1996, pet. ref'd); Myers v. State, 866 S.W.2d
673, 674 (Tex. App.--Houston [1st Dist.] 1993, pet. ref'd). Appellant did not object to the omission in
the charge and waived any non-fundamental error. Nixon, 940 S.W.2d at 691. He contends, however,
that the error was so egregious and created such harm that he has not had a fair and impartial trial--in
short, "egregious harm." See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on
reh'g).

 The United States Constitution does not require a parole law jury instruction in state courts. 
O'Bryan v. Estelle, 714 F.2d 365, 389 (5th Cir. 1983). No Texas case has held that omitting the
instruction automatically requires reversal. Myers, 866 S.W.2d at 674. The parole instructions were
designed to increase the length of punishment assessed by juries. The State, not the appellant, benefits from
the instructions. Grigsby v. State, 833 S.W.2d 573, 576 (Tex. App.--Dallas 1992, pet ref'd); see also
Myers, 866 S.W.2d at 674; Roberts v. State, 849 S.W.2d 407, 410 (Tex. App.--Fort Worth 1993, pet.
ref'd). As a practical matter, many defense counsels do not request the parole instruction or object to its
omission.

 In view of the fact that the statute is mandatory and has been constitutionally sanctioned,
Oakley v. State, 830 S.W.2d 107, 110-11 (Tex. Crim. App. 1992), it can certainly be said that the trial
court should have submitted the parole instruction, particularly where an affirmative finding of the use of a
deadly weapon had been made at the guilt stage of the trial. See also Tex. Code Crim. Proc. Ann. art.
36.14 (West Supp. 1998( ("the judge shall . . . deliver . . . a written charge distinctly setting forth the law
applicable to the cases"). Upon receipt of the jury's note, it should have been clear that the jury on its own
initiative was probably considering the effects of the parole law, although the possibility of parole is a matter
of common knowledge and the mere discussion by jurors of the parole laws, without more, is not jury
misconduct. See Higgins, 924 S.W.2d at 742. It would have been better practice to, at least, have given
the parole instruction to the jurors at the time of the receipt of their note as was done in Nixon, 940
S.W.2d at 691. This the trial court did not do, but followed in part the suggestion offered by appellant's
counsel. Appellant cannot complain on appeal of that which he asked the trial court to do.

 In determining whether fundamental error in the charge caused appellant "egregious harm,"
we must assay the actual harm in light of the entire record. Almanza, 606 S.W.2d at 171. The purpose
of this review is to illustrate the actual not just theoretical harm to appellant. Id. at 174; Roberts, 849
S.W.2d at 410. The State argues that this Court should decline to engage in a fundamental error analysis
on the facts of the instant case. It contends that appellant. by failing to object to the original charge and
waiving non-fundamental error, and by affirmatively requesting and endorsing the trial court's answer to
the jury's note, voluntarily relinquished his right to complain on appeal of a fundamental charge error. See
Reyes v. State, 934 S.W.2d 819, 820 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd); McCray v.
State, 861 S.W.2d 405, 409 (Tex. App.--Dallas 1993, no pet.). While this argument is appealing, we
nevertheless review for fundamental error but find it lacking.

 Following Almanza, 686 S.W.2d at 171, we have examined the entire jury charge, the
record evidence, and the contested issues, the argument of counsel and other relevant record information. 
At the penalty stage of the trial, appellant admitted he had prior convictions for misdemeanor theft and
criminal mischief. Two Marble Falls police officers testified that appellant's reputation for being a peaceful
and law-abiding citizen was "bad." No mention of parole was made to the jury in argument or otherwise. 
The prosecutor told the jury that the range of punishment for the first degree offense was from 5 to 99 years
or life imprisonment and a fine not to exceed $10,000. The State recommended confinement only "for a
period of time." The jury assessed a relatively short term of imprisonment. It is difficult to see how
appellant was harmed by the failure to give the parole charge. Appellant has failed to show that the error
was so egregious and created such actual harm as to deny him a fair and impartial trial. The fifth ground
of error is overruled.


Ineffective Assistance of Counsel


 In points of error seven and eight, appellant contends that he did not receive effective
assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution, and that at the
penalty stage of the trial did not receive the same guaranteed right as provided by article I, section 10 of
the Texas Constitution.

 The United States Supreme Court in Strickland v. Washington, 486 U.S. 668 (1984),
adopted a two-pronged standard necessary to show ineffective assistance of counsel. A convicted
defendant must (1) show that his trial counsel's performance was deficient, in that counsel made such
serious errors he was not functioning effectively as counsel, and (2) that the deficient performance
prejudiced the defense to such a degree that the defendant was deprived of a fair trial. A strong
presumption exists that counsel rendered adequate assistance and made all significant decisions in the
exercise of reasonable professional judgment. Id. at 689. Absent a showing of both prongs of the test,
we cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders
the result unreliable. Id. at 687. The Strickland standard has been adopted in Texas for resolving all
portions of ineffective assistance of counsel under both the federal and state constitutions. Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App.1986). Counsel's performance must be judged on the totality
of the representation, rather than by isolated acts or omissions of trial counsel, and the test is applied at the
time of the trial, not through hindsight. Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App.
1986), cert. denied, 480 U.S. 940 (1987). The burden of proving ineffective assistance rests upon the
defendant by a preponderance of the evidence. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.
App. 1994); Moore v. State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985).

 Appellant complains that his trial counsel was ineffective when he did not object to two
improper arguments by the prosecution at the guilt/innocence phase of the trial. At one point, the
prosecutor, in effect, told the jurors they did not have to be unanimous in the finding of a culpable mental
state, whether it be intentionally, knowingly, or recklessly. Later, the jury was informed by the prosecutor
it could convict for aggravated assault on a public servant and did not have to be unanimous as to count
one or count two which charged the same offense under alternative theories. The now complained-of
statements were only a minor part of the State's argument.

 The State argues that the prosecutor's remarks were proper, urging that there is no general
requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict. See
Schad v. Arizona, 501 U.S. 624, 632 (1991); Kitchens, 823 S.W.2d at 258; Nevarez v. State, 847
S.W.2d 637, 643-44 (Tex. App.--El Paso 1993, pet. ref'd). Be that as it may, viewed from the totality
of the representation, the failure to object was an isolated act or omission by appellant's trial counsel. See
Ex parte Raborn, 658 S.W.2d 602, 605 (Tex. Crim. App. 1983). The fact that another attorney might
have pursued a different course of action at trial does not support a finding of ineffectiveness. Banks v.
State, 819 S.W.2d 676, 681 (Tex. App.--San Antonio 1991, pet. ref'd). The allegations of ineffective
assistance will be sustained only if they are firmly founded. Smith v. State, 676 S.W.2d 379, 385 (Tex.
Crim. App. 1984), cert. denied, 471 U.S. 1661 (1985). The right of effective assistance does not
guarantee errorless counsel or counsel whose competency is to be judged by hindsight. Saylor v. State,
660 S.W.2d 822, 824 (Tex. Crim. App. 1983). We conclude that appellant has not met the two-pronged
test of Strickland as to the complained-of jury argument at the first stage of the bifurcated trial.

 Appellant further contends that another complaint of ineffective assistance occurred at the
penalty stage of the trial when counsel failed to object to the omission of the charge on the parole law as
discussed earlier. The test to be applied at the penalty stage for ineffective assistance is that of Ex parte
Duffy, 607 S.W.2d 507, 514 n.14 (Tex. Crim. App. 1980): whether counsel was reasonably likely to
render and was rendering reasonably effective assistance of counsel. See Vaughn v. State, 931 S.W.2d
564, 566 (Tex. Crim. App. 1996). There is no requirement at the penalty stage that a defendant show
prejudice under the second prong of the Strickland test. See Ex parte Cruz, 739 S.W.2d 53, 59 (Tex.
Crim. App. 1987). The omission of the parole law charge was harmless to appellant. The action of
counsel in failing to object cannot constitute ineffective assistance of counsel under the circumstances. We
overrule points of error seven and eight.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Chief Justice Carroll, Justices Jones and Onion*; Chief Justice Carroll not participating

Affirmed

Filed: March 26, 1998

Do Not Publish










* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. The 1993 enactment added a new subsection (b); redesignated former subsection (b) as
subsection (c); added a new subsection (d) and redesignated former subsection (c) as subsection (e). In
the new subsection (e), the offense under subsection (a) became a Class A misdemeanor instead of a Class
B misdemeanor and the offense in subsection (b) became a felony of the third degree.
2. Later before the jury, Hensley revealed that the probation was for tampering with a government
document because she had lied on a welfare application.
3. The Sixth Amendment to the United States Constitution is applicable to the states by virtue of
the Fourteenth amendment. See Pointer v. Texas, 380 U.S. 400, 403 (1965).
4. The plain language of Rule 612(b) creates an exception to Rule 608(b) where the evidence
shows bias, interest, or a motive for the witness to testify untruthfully. See Sparks, 943 S.W.2d at 517.



t of the State's argument.

 The State argues that the prosecutor's remarks were proper, urging that there is no general
requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict. See
Schad v. Arizona, 501 U.S. 624, 632 (1991); Kitchens, 823 S.W.2d at 258; Nevarez v. State, 847
S.W.2d 637, 643-44 (Tex. App.--El Paso 1993, pet. ref'd). Be that as it may, viewed from the totality
of the representation, the failure to object was an isolated act or omission by appellant's trial counsel. See
Ex parte Raborn, 658 S.W.2d 602, 605 (Tex. Crim. App. 1983). The fact that another attorney might
have pursued a different course of action at trial does not support a finding of ineffectiveness. Banks v.
State, 819 S.W.2d 676, 681 (Tex. App.--San Antonio 1991, pet. ref'd). The allegations of ineffective
assistance will be sustained only if they are firmly founded. Smith v. State, 676 S.W.2d 379, 385 (Tex.
Crim. App. 1984), cert. denied, 471 U.S. 1661 (1985). The right of effective assistance does not
guarantee errorless counsel or counsel whose competency is to be judged by hindsight. Saylor v. State,
660 S.W.2d 822, 824 (Tex. Crim. App. 1983). We conclude that appellant has not met the two-pronged
test of Strickland as to the complained-of jury argument at the first stage of the bifurcated trial.

 Appellant further contends that another complaint of ineffective assistance occurred at the
penalty stage of the trial when counsel failed to object to the omission of the charge on the parole law as
discussed earlier. The test to be applied at the penalty stage for ineffective assistance is that of Ex parte
Duffy, 607 S.W.2d 507, 514 n.14 (Tex. Crim. App. 1980): whether counsel was reasonably likely to
render and was rendering reasonably effective assistance of counsel. See Vaughn v. State, 931 S.W.2d
564, 566 (Tex. Crim. App. 1996). There is no requirement at the penalty stage that a defendant show
prejudice under the second prong of the Strickland test. See Ex parte Cruz, 739 S.W.2d 53, 59 (Tex.
Crim. App. 1987). The omission of the parole law charge was harmless to appellant. The action of
counsel in failing to object cannot constitute ineffective assistance of counsel under the circumstances. We
overrule points of error seven and eight.

 The judgment is affirmed.