Affirmed and Memorandum Opinion filed April 15, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00419-CR

___________________

 

Joshua Royce Mauldin, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 212th District Court

Galveston County,
Texas



Trial Court Cause No. 07CR1560

 



 

 

MEMORANDUM OPINION

Rejecting his insanity defense, a
jury found Joshua Royce Mauldin guilty of injury to a child, and affirmatively
found he used or exhibited a deadly weapon, a microwave oven, during the commission
of the offense.  The jury assessed punishment at twenty-five years’ confinement
and a $10,000 fine.  In two issues, Mauldin argues the trial court erred in the
punishment phase by allowing the State to (1) elicit inadmissible and
irrelevant testimony from its own and Mauldin’s expert witnesses and (2) make
improper jury argument without curative instruction by the court.  We affirm.

I

In May 2007, Mauldin and some of his family were
staying at a motel in Galveston.  The charge against Mauldin arose from injuries
he inflicted on his two-month-old daughter while he was alone with her in the motel
room.  When Mauldin’s family returned to the room, someone called 911. 
According to the responding paramedic, the baby had second and third degree
burns on her face, ear, and hand.  After providing several versions of what had
happened to the baby, Mauldin ultimately confessed he had thrown her from bed
to bed, shaken her, punched her, put her in the motel-room safe, took her from the
safe, put her in the refrigerator, and took her from refrigerator and put her
in the microwave.  He forced her in, shut the door and turned the microwave on for
ten seconds.

A jury found Mauldin guilty, rejecting his theory he
was insane at the time of the incident.  The jury also found he had used a
deadly weapon, i.e., the microwave, during the commission of the offense.

At the punishment phase, the State called Dr. Harry
Faust, a psychiatrist who saw Mauldin at the county jail in May 2007; Dr. Shana
Khawaja, a clinical psychologist with the Texas Department of Criminal Justice;
Sergeant Don Hollingsworth, a Warren, Arkansas, investigator who testified
about a 2006 domestic-violence incident involving Mauldin; and Heather Croxton,
who was currently caring for the baby.  Mauldin called Dr. Michael Fuller, an
associate professor of psychiatry who testified about Mauldin’s potential for
rehabilitation and amenability to treatment in the community; and Mauldin’s
mother who testified about supporting him if he were placed on community
supervision.

The court instructed the jury that the range of
punishment was five years to ninety-nine years or life and a fine not to exceed
ten thousand dollars.  The State argued for life imprisonment.  The defense
argued, among other matters, that Mauldin suffered from mental illness, had not
caused a death, and community supervision was appropriate punishment.  The jury
assessed punishment at twenty-five years’ confinement and a $10,000 fine.

II

In issue one, Mauldin argues “[t]he trial court erred
by allowing the State to elicit inadmissible and irrelevant testimony from an
expert witness of what the proper punishment should be.”  When reviewing a
trial court’s decision to admit or exclude evidence, we apply an
abuse-of-discretion standard.  Ramos v. State, 245 S.W.3d 410, 417–18
(Tex. Crim. App. 2008).  A trial court does not abuse its discretion if its
evidentiary ruling is within the “zone of reasonable disagreement,” and is
correct under any legal theory applicable to the case.  Winegarner v. State,
235 S.W.3d 787, 790 (Tex. Crim. App. 2007); Bargas v. State, 252 S.W.3d
876, 889 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Because the trial
court is usually in the best position to decide whether evidence should be
admitted or excluded, we must uphold its ruling unless its determination was so
clearly wrong as to lie outside the zone within which reasonable persons might
disagree.  See Winegarner, 235 S.W.3d at 790; Hartis v. State,
183 S.W.3d 793, 801–02 (Tex. App.–Houston [14th Dist.] 2005, no pet.).

Regardless of whether the judge or the jury assesses punishment,
the prosecution and the defense may offer evidence on “any matter the court
deems relevant to sentencing.”  Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(Vernon Supp. 2009).  Admissibility of evidence at the punishment phase of a
non-capital trial is a function of policy, not a question of logical
relevance.  Ellison v. State, 201 S.W.3d 714, 719 (Tex. Crim. App.
2006).  Relevancy in this context is “‘a question of what is helpful to the
jury in determining the appropriate sentence for a particular defendant in a
particular case.’”  Id. (quoting Rogers v. State, 991 S.W.2d 263,
265 (Tex. Crim. App. 1999)).  Evidence of a defendant’s suitability for
community supervision is admissible when a defendant seeks community
supervision.  See id. at 722.

Mauldin nevertheless complains about the State’s direct
examination of Dr. Faust and its cross-examination of Dr. Fuller relating to
community supervision.  Mauldin first objects to the following question
directed to Faust:

Q  [by the Prosecutor]  And with your experience of this
defendant, Dr. Faust, do you believe probation to be an appropriate punishment
for him?

[Defense Counsel]:  I object to relevance.

THE COURT:  Overruled.

Q  You can answer.

A  [by Faust] I can’t answer that. I think his behavior is unpredictable.
Maybe more so than the average.

Mauldin contends the prosecutor improperly asked for
an expert recommendation regarding punishment and that such testimony is
inadmissible under Sattiewhite v. State, 786 S.W.2d 271, 290 (Tex. Crim.
App. 1989).  Even if one assumes the question was improper (and we do not so
assume), the mere asking of an improper question will not constitute reversible
error unless the question results in obvious harm to the accused.  Brown v.
State, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985); Yarbrough v. State,
617 S.W.2d 221, 228 (Tex. Crim. App. 1981).

In the present case, Faust did not make a
recommendation for or against probation, but merely responded that Mauldin’s
behavior was unpredictable, a matter about which he had previously testified
without objection.[1]
The prosecutor’s question thus did not result in new facts being introduced
into the trial.  See Richard v. State, 830 S.W.2d 208, 215 (Tex. App.—Houston
[14th Dist.] 1992, pet. ref’d) (stating unanswered question did not inject new facts into trial).  In short, we
do not conclude the prosecutor’s question had a “substantial and injurious
effect or influence in determining the jury’s verdict.”  See King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

Second, Mauldin complains about the following cross-examination
of Fuller, Mauldin’s expert witness:

Q  [by the Prosecutor]  In summer of 2005, did you testify
in a case involving the Defendant Martha Burke?

A  [by Fuller] I did, yes.

Q  Did you testify in the punishment of that case?

[Defense Counsel]:  I’m going to
object to relevance, Judge.

A  I do not know but I may well have.

Q  In that case, did you not also recommend - - let me back
up.

Do you remember the facts of that
case?

A  All of them probably not.  The important ones, yes.

Q  This Defendant was charged with aggravated sexual
assault of a child with a deadly weapon; is that correct?

A  That is correct.

Q  And she stabbed her five year old daughter twice; is
that correct?

A  While she slept, yes.

Q  The daughter was sleeping, yes.

A  Yes.

Q  And in the punishment phase of that case, did you not
also recommend to the jury that she could be treated within the community?

[Defense Counsel]:  I’m going to
object to relevance, Your Honor.

THE COURT:  Overruled.

A  Well, I think that the mother - -

[The Prosecutor]: I’m going to
object to nonresponsive.

THE COURT:  What did he say?  I
didn’t hear what you said, Doctor.

A  I said well, I think.

THE COURT:  Overruled.

A  May I continue?

THE COURT:  Yes

A  I suggested that she could be treated in the community
with a list of about 30 provisions that would make that reasonably safe.

Q  Thank you, Dr. Fuller.  But the bottom line in that case
where she stabbed her five year old twice you also recommended that she could
be treated within the community; is that correct?

A  That’s correct.

Q  When does it get bad enough to send somebody to prison,
Dr. Fuller?

A  It frequently gets bad enough to send people to prison
depending on the circumstances of the case.

Q  Wasn’t that bad enough when Martha Burke stabbed her
daughter twice?

[Defense Counsel]:  I object.  Argumentative,
Your Honor.

THE COURT: Sustained.

Q  It’s not bad enough when Mr. Mauldin placed his child in
a microwave oven?

A  Did I say that or did you?

Q  I’m asking you when does it get bad enough - -

A  I have never stated that either one of these persons did
not deserve punishment.  My focus is whether or not they can be safely,
clinically managed in [sic] community and under what conditions. And under
those conditions and with those stipulations, the answer is yes.

Mauldin contends this testimony was irrelevant and
counter to the rule in Sattiewhite.  In Sattiewhite, the court of
criminal appeals held that an expert witness could not express an opinion on
what punishment should be assessed.  786 S.W.2d at 290–91.  Mauldin does not
explain how the preceding testimony constituted an opinion (at least not an
adverse one) on the punishment to be assessed in the present case.

Moreover, on direct examination, Mauldin had asked
Fuller whether prison was an appropriate place for him or whether he could
benefit and be rehabilitated in society.  Fuller responded, “It’s my personal
belief that . . . from a management psychiatric social perspective that Joshua
could be relatively easily [treated] compared to many treated successfully in
the community.”  Fuller also testified he was absolutely not “one of these
individuals that just wants to help everybody.”

The State’s line of questioning about which Mauldin
complains was an obvious attempt to show Fuller’s bias and impeach his
credibility.  Texas Rule of Evidence 611(b) provides that a party may
cross-examine a witness on any matter relevant to any issue in the case,
including credibility.  Tex. R. Evid. 611(b).  The trial court has discretion
regarding the extent of cross-examination of a witness on the issue of
credibility or bias.  See Cantu v. State, 939 S.W.2d 627, 635 (Tex. Crim.
App. 1996).  Given Fuller’s testimony on direct examination, we conclude the
trial court did not abuse its discretion in permitting the cross-examination about
which Mauldin complains.  See Sparks v. State, 943 S.W.2d 513, 515–17
(Tex. App.—Fort Worth 1997, pet. ref’d) (concluding trial court acted within
its discretion in permitting cross-examination of defendant’s expert regarding
prior testimony in another trial despite defendant’s arguments expert’s prior
testimony (1) was not inconsistent with present testimony, (2) was inadmissible
hearsay, (3) involved collateral matters, and (4) involved specific instances
of conduct).

For the preceding reasons, we overrule Mauldin’s
first issue.




 

III

In issue two, Mauldin argues “[t]he trial court erred
by allowing the State to make improper jury arguments, without the trial court
making a curative instruction to disregard to the jury as requested.”  His
complaint rests on the following two segments of the State’s argument:

And defense counsel comes up here
and says, well, she didn’t die. Thank God, she did not die.  But we do not
reward people for not killing their children when they try because that’s what
he was doing.  We don’t reward people for that.

[Defense Counsel]:  I’m sorry.  I’m
sorry.  Judge, I move to strike that and object to the statement he was trying
to kill his daughter.

THE COURT:  Sustained.

. . .

Dr. Fuller came back and
testified. I don’t know when a crime is bad enough for Dr. Fuller to recommend
somebody go to prison. He previously testified in a case where a woman stabbed
her sleeping daughter. That she should be out on probation.

[Defense Counsel]: Your Honor, I’m
going to object to improper communication.

THE COURT: Sustained.

After the court sustained Mauldin’s objections to
each argument, he made no further request of the court.  Mauldin did not
request an instruction for the jury to disregard the argument and did not move
for a mistrial.  The prosecutor resumed argument without any additional
instructions or comments by the court.

To complain on appeal about erroneous jury argument—including
erroneous jury argument so prejudicial an instruction to disregard could not
cure it—an appellant must show he lodged an objection during trial and pressed
that objection to an adverse ruling.  Johnson v. State, 233 S.W.3d 109,
114 (Tex. App.—Houston [14th Dist.] 2007, no pet.)  (citing Cockrell v.
State, 933 S.W.2d 73, 89 (Tex.Crim.App.1996)).  Mauldin did not do so. [2]   He has not preserved
his improper-jury-argument issue for review.

For the preceding reasons we overrule Mauldin’s
second issue.

* * *

            Having overruled the
appellant’s two issues, we affirm the judgment.

 

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Yates, Seymore, and Brown.

Do
Not Publish —Tex. R. App. P.47.2(b).

 









[1]
Mauldin also did not object to Faust’s response
to the specific question about which Mauldin now complains.





[2] Mauldin attempts to
obviate the fact he did not pursue either objection to an adverse ruling.  He
contends his motion “to strike” was a request for an instruction to disregard,
and complains the court failed to act on his request.  He also contends “[t]rial
counsel was not allowed the opportunity, from the record to request a mistrial,
because Ms. Vandiver immediately resumed her closing argument, without further
comment from the trial court.”  He provides no authority to support his
purported exceptions to the need to pursue an objection to an adverse ruling.