David HIGGINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–95–00144–CR.

Court of Appeals of Texas, Texarkana.

Submitted March 28, 1996.

Decided May 7, 1996.

Discretionary Review Refused Sept. 11, 1996.

Edwin M. Sigel, Dallas, for appellant.

Michael Shepherd, Assistant District Attorney, Texarkana, for appellee.

Before CORNELIUS, C.J., and GRANT, J.*

## OPINION

GRANT, Justice.

David Higgins appeals from a jury conviction for the murder of his wife, Lisa Higgins, for which he was sentenced to seventy-five years' confinement. The jury also made an affirmative finding that David Higgins used a deadly weapon to commit this offense.

Lisa Higgins was killed on New Year's Day, 1993, by a gunshot wound to her head. Testimony at trial revealed that she was shot in her home while only she and her husband, David Higgins, were present. Their young son was asleep in another room at the time of the shooting, and there were no witnesses to the shooting other than David Higgins. David Higgins testified that the shooting was an accident.

Testimony at trial revealed that on the day Lisa Higgins was shot, she, her brother, David Reppond, and David Higgins had been drinking, doing chores around the house, and watching sports on television. David Higgins's cousin, Donald,[1] was also present that day. David Reppond testified that they had been drinking alcoholic beverages and that David Higgins showed him his .357 pistol.

There was testimony at trial that Lisa and David Higgins were arguing that day because Lisa wanted to go into town to see her girlfriend, Christy Graves, and David Higgins did not want her to go. Later that afternoon, the argument evolved into a wrestling match outside of the house when Lisa attempted to leave and David took away the keys to the truck. David Reppond testified that Lisa Higgins was fighting back during this altercation.

As David Higgins was dragging Lisa Higgins back into the house, David Reppond intervened, and he and David Higgins fought. Lisa Higgins retreated into the couple's home, followed by David Higgins and, later, David Reppond. As David Reppond went into the kitchen, David Higgins came after him with a rifle and told David Reppond that if he did not leave he would kill him.

Lisa Higgins then told her brother to run and she jumped out the window, landing outside of the house. David Reppond grabbed the rifle from David Higgins, and the two wrestled over the rifle. David Higgins hit David Reppond in the mouth with the butt of the rifle during the struggle. David Higgins then went back outside, where he and Lisa Higgins continued to struggle and wrestle.

David Reppond then left, telling the couple that he was "going to get the law." When David Reppond was fifty to seventy-five yards away, he heard a single gunshot. He later called 911, and the police instructed him not to return to the scene.

Bowie County Deputy Terry Prince testified that he was the first to arrive at the scene. He found Lisa Higgins's body in the bathroom. She drew one last breath before she died. A vanity mirror was broken, and there were two footprints on Lisa Higgins's body.

Jackie Whitecotton, a neighbor, told Deputy Prince that David Higgins was next door at Higgins's father's mobile home. He found Higgins and the murder weapon at Higgins's father's trailer home and five .357 rounds in David Higgins's pants pocket. Prince arrested David Higgins for the murder of Lisa Higgins. Deputy Prince was assisted in this arrest by Sergeant Charlie Thompson.

The officers read David Higgins his *Miranda*[2] warnings and then arrested him. When the officers attempted to handcuff Higgins, however, he resisted and a struggle ensued. After the officers subdued Higgins, they placed him in the back of the patrol car.

---

* Justice Charles Bleil was a member of the Court when this case was argued and submitted, and participated fully in the consideration of this case, but resigned from the Court before the opinion was issued.

1. Donald's last name is not in the statement of facts.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Both officers testified that Higgins was intoxicated at the time of his arrest.

Officer Thompson was in the patrol car with Higgins after he was handcuffed. Thompson testified that Higgins became violent in the car and was kicking, screaming, and banging his head against the window. At one point, Higgins attempted to come over the seat towards Thompson. While in the police car, without any prompting from Thompson, Higgins told Thompson, "I killed the bitch, so please shoot me." Thompson testified that Higgins was both intoxicated and very upset when he made this statement. David Higgins also testified that he was intoxicated at the time of the statement and was considering suicide. The trial court ruled that this statement was admissible.

The first trial against the defendant ended in a hung jury on March 17, 1994. At the defendant's second trial, from which he appeals, the jury found David Higgins guilty of the murder of his wife, Lisa Higgins.

■■■ By his first point of error, Higgins contends the trial court erred in overruling his motion for new trial because of alleged jury misconduct. To establish jury misconduct, the complaining party must show that the misconduct was material and, based on the record as a whole, that it probably resulted in harm. Tex.R.Civ.P. 327(a); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex. 1985); *Flores v. Dosher*, 622 S.W.2d 573, 574 (Tex.1981). When the evidence concerning alleged jury misconduct is conflicting, an appellate court will presume misconduct did not occur. *See Landreth v. Reed*, 570 S.W.2d 486, 491 (Tex.Civ.App.—Texarkana 1978, no writ); *see also Tollett v. State*, 799 S.W.2d 256, 259 (Tex.Crim.App.1990) (holding that the decision on a motion for a new trial rests within the sound discretion of the trial court).

■■ Higgins argues under this point that the jury improperly considered how parole laws might apply to him specifically, in contravention of the Texas Code of Criminal Procedure, which requires Texas courts to instruct juries on good conduct time and parole.[3] Tex.Code Crim.Proc.Ann. art. 37.07, § 7 (Vernon Supp.1996). Because the possibility of parole is a matter of common knowledge, the mere discussion by jurors of the parole laws, without more, is not jury misconduct. *Dawkins v. State*, 822 S.W.2d 668, 674 (Tex.App.—Waco 1991), *pet. ref'd per curiam*, 825 S.W.2d 709 (Tex.Crim.App. 1992); *Benitez v. State*, 733 S.W.2d 395, 397 (Tex.App.—Fort Worth 1987, pet. ref'd).

■■ Because the basis upon which Higgins asserted his motion for new trial rested upon facts outside the record, the trial court properly held an evidentiary hearing to enable Higgins to present evidence to develop this point fully for appellate review. *See Vera v. State*, 868 S.W.2d 433, 436 (Tex. App.—San Antonio 1994, no pet.); *Webb v. State*, 757 S.W.2d 830, 831 (Tex.App.—Texarkana 1988, pet. ref'd).

At the hearing, Higgins offered into evidence jury questionnaires and taped interviews of several jurors. Juror Barbara Little stated in her interview that the jury considered how the parole laws would affect Higgins, *i.e.*, "in order to do so many years you had to give him so many years." At the hearing, however, Juror Little testified that she was confused during the interview and that she did not consider how the application of parole laws might affect Higgins's sentence. Additionally, Juror Little testified that she supported Higgins's seventy-five-year sentence "because he committed murder in my eyes."

Juror Tami Maxey indicated in both her questionnaire and interview that the jury discussed parole laws and applied them to Higgins. At the hearing, however, she stated that the jury gave Higgins seventy-five years not because of parole laws, but because Higgins deserved such a sentence.

Juror Susan Green indicated in both her questionnaire and interview that the jury considered parole law in deciding Higgins's

---

**3.** A change in the Texas Constitution in 1989 gave the Legislature the authority to enact laws that require or permit courts to instruct juries on the effect of good conduct time and parole law. *See* Tex. Const. art. IV, § 11(a). The Legislature then enacted Article 37.07, § 4 of the Texas Code of Criminal Procedure, effective November 7, 1989. *See* Tex.Code Crim.Proc.Ann. art. 37.07, § 4 (Vernon Supp.1996).

sentence (stating that the jury was "guessing of how much [time] he would serve and if he would get out for good behavior"). At the hearing, however, she testified that she did not understand the question. She further testified that her primary purpose in sentencing Higgins was punishment and that she wanted to give Higgins a harsher sentence than he received. She testified that parole did not play a major part in her decision on what punishment to give Higgins.

Juror Marvin Cartwright responded on his questionnaire that he "decided to give seventy-five years based on parole." At the hearing, however, he testified that "that's what he [defense investigator Bryan Galindo] told me to write." He further testified that his above answer did not respond to the question asked by the questionnaire and that he did not "know why it is there."

Walter Taylor, the jury foreman, testified that the jury did not reach the seventy-five-year sentence based upon parole law, but rather because of the severity of Higgins's offense. Taylor also testified that he wanted to give Higgins ninety-nine years instead of seventy-five.

■ Issues of fact as to jury misconduct at a hearing on a motion for a new trial are determined by the trial court and will not be disturbed absent an abuse of discretion. *Tollett*, 799 S.W.2d at 259. Because the trial judge in the present case was given conflicting evidence of jury misconduct, it was not an abuse of discretion to conclude that misconduct did not occur.[4] This point of error is overruled.

■ By his second point of error, Higgins asserts that the trial court erred in instructing the jury on parole law because he was not entitled to parole based on TEX.CODE CRIM.PROC.ANN. art. 42.18, § 8(c)(1) (Vernon Supp.1996). Although Higgins correctly

states that he was not eligible for parole, the trial court's instruction on parole was not error because it was mandatory under TEX. CODE CRIM.PROC.ANN. art. 37.07, § 4(a) (Vernon Supp.1996) (stating that the court "shall charge the jury" with certain parole instructions). The instructions given by the trial court matched the mandatory ones outlined by statute in effect at the time of this offense. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a). Therefore, this instruction was not erroneous. Accordingly, this point of error is overruled.

■ By his third point of error, Higgins contends the trial court erred in allowing evidence of an incriminating statement allegedly made involuntarily by Higgins while he was in police custody. While in custody and in the back of a police car, David Higgins spontaneously stated that he "killed the bitch, so please shoot me." After a hearing outside of the presence of the jury, the trial court allowed the testimony. Higgins contends his intoxication rendered this statement involuntary and, thus, not properly admissible against him.

■ At a hearing on the voluntariness of a defendant's statement, the trial court is the exclusive judge of the credibility of the witnesses and the weight to give their testimony. *Butler v. State*, 872 S.W.2d 227, 236 (Tex.Crim.App.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *Long v. State*, 823 S.W.2d 259, 277 (Tex.Crim.App.1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). Absent a finding of abuse of discretion, an appellate court will not disturb a trial court's finding on the voluntariness of a confession. *Butler*, 872 S.W.2d at 236; *Long*, 823 S.W.2d at 277.

■ While intoxication is relevant to the determination of the voluntariness of a state-

---

4. The trial court overruled Higgins's motion based upon *Sneed v. State*, which held that in order to show that the jury's discussion of parole constituted reversible error, a defendant must show

  (1) a misstatement of the law
  (2) asserted as fact
  (3) by one professing to know the law
  (4) which is relied upon by other jurors

  (5) who for that reason changed their vote to a harsher punishment.

*Sneed v. State*, 670 S.W.2d 262, 266 (Tex.Crim. App.1984). This test, however, deals with a misstatement of the law by one or more of the jurors. In the present case, no such misstatement is alleged. Therefore, the *Sneed* case is not applicable to this situation.

ment, it is not per se determinative of this issue. *Nichols v. State,* 754 S.W.2d 185, 190 (Tex.Crim.App.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989), *overruled on other grounds, Harris v. State,* 784 S.W.2d 5 (Tex.Crim.App.1989); *Green v. State,* 764 S.W.2d 242 (Tex.Crim.App.1989); *Vasquez v. State,* 163 Tex.Crim. 16, 288 S.W.2d 100, 109 (1956). The central question is the extent to which Higgins was deprived of his faculties due to the intoxication. *Nichols,* 754 S.W.2d at 190; *Vasquez,* 288 S.W.2d at 109. If Higgins's intoxication rendered him incapable of making an independent, informed choice of free will, then his statement was involuntary. *Nichols,* 754 S.W.2d at 190, *citing Jurek v. Estelle,* 623 F.2d 929, 937 (5th Cir.1980).

In three previous cases discussing the above factors, the appellate courts upheld the trial courts' findings of a voluntary statement because the police officers to whom the statements were made testified that the defendant did not appear intoxicated and appeared to be in control of his faculties. *Nichols,* 754 S.W.2d at 190; *Pena v. State,* 832 S.W.2d 697, 700 (Tex.App.—Corpus Christi 1992, pet. ref'd); *Powell v. State,* 636 S.W.2d 863, 865 (Tex.App.—Fort Worth 1982, no pet.). In two cases, the appellate courts upheld the trial courts' findings of a voluntary statement based upon a passage of time between the defendant's consumption of the intoxicant and his confession. *Nichols,* 754 S.W.2d at 190; *Vasquez,* 288 S.W.2d at 109. In another case, the appellate court upheld the trial court's finding of voluntariness based upon the inconsistent testimony of the defendant concerning the amount of alcohol he had consumed before his confession. *Espinosa v. State,* 899 S.W.2d 359, 362 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd).

Despite the above line of cases, the Court of Criminal Appeals has recently begun to focus on the voluntariness of a defendant's statement, and not his or her capacity to make such a statement. For example, the Court recently upheld the admission of a statement by a defendant who claimed to be intoxicated at the time of making a statement in response to custodial interrogation. *Alvarado v. State,* 912 S.W.2d 199, 211–12 (Tex.

Crim.App.1995). Both the arresting officer and the officer who took the defendant's statement in that case testified that the defendant was given *Miranda* warnings, appeared to understand the warnings, was coherent both at the time of arrest and while giving the statement, was not threatened or coerced into giving such statement, was not promised any special treatment in return for his statement, and never requested a lawyer. *Alvarado,* 912 S.W.2d at 210–11. In *Alvarado,* an officer at the detention center to which the defendant was brought and another witness who was with the defendant at the time of his arrest testified that the defendant appeared intoxicated, but appeared to understand what was happening. *Alvarado,* 912 S.W.2d at 211. The defendant in *Alvarado* testified that he was intoxicated at the time of his arrest and interview and that, because of his intoxication, did not fully understand what was happening. *Alvarado,* 912 S.W.2d at 211. He further testified that the police officers attempted to intimidate him during the interview process by cursing at him, stripping him to his underwear, striking him in the face with a boot, forcing him to sit on a cold steel desk, refusing his repeated requests for a lawyer and promising that they would "tell the judge to take it easy on" him if he would give the statement. *Alvarado,* 912 S.W.2d at 211.

The Court in *Alvarado* noted that "[a]bsent coercive police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Alvarado,* 912 S.W.2d at 211, citing *Colorado v. Connelly,* 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473, 482 (1986). Because the Court in *Alvarado* found no evidence of official, coercive conduct in taking the defendant's statement, they upheld the trial court's ruling.

In the present case, both the arresting officer and the officer to whom Higgins made the statement testified that Higgins was hostile, self-destructive, and appeared to be drunk. Unlike *Alvarado,* however, Higgins's statement was not in response to any custodial interrogation. As in the *Alvarado* case, the record showed no evidence of official,

coercive conduct with respect to Higgins's statement, and the trial court concluded that the "statement was made by the defendant freely and voluntarily and without questioning by law enforcement officials." Furthermore, Higgins was not promised anything in return for his statement, and although he had been given *Miranda* warnings, he had not requested a lawyer. Based on these factors, we conclude that the trial court did not abuse its discretion in ruling that Higgins's statement was voluntary. This point of error is overruled.

■ By his fourth point of error, Higgins contends the trial court erred in allowing testimony about the character traits of the deceased. Specifically, Higgins complains of the admission of testimony by Joyce Harp, Lisa Higgins's work supervisor, that Lisa was a good employee, that she "got along great with the other employees," and that she had a "clean [work] record." Higgins contends that this was an improper attempt to show the peaceable character of Lisa Higgins.

■ It is never proper for the State in the first instance to prove that the slain person in a homicide case was peaceable and inoffensive. *Armstrong v. State,* 718 S.W.2d 686, 695 (Tex.Crim.App.1985); *Arthur v. State,* 170 Tex.Crim. 161, 339 S.W.2d 538, 539 (1960). Such evidence becomes admissible in rebuttal, however, when the defense has elicited evidence of the victim's violent character. *Armstrong,* 718 S.W.2d at 695; *Arthur,* 339 S.W.2d at 539.

The State contends that this evidence was admissible to rebut earlier testimony elicited by Higgins during cross-examination that Lisa Higgins had acted violently on other occasions. Specifically, the State points to testimony by Lisa Higgins's brother, David Reppond, that Lisa Higgins had previously "got into it" with another brother, James, after Lisa's son had been "popped on the head." The State also references testimony by Reppond that while he observed Lisa and David Higgins fighting on the day of Lisa's death, Lisa was "fighting back." Additionally, the State points to testimony by Christy Graves, Lisa Higgins's best friend, that Lisa was "not a meek, lame person, [but] she was full of energy."

Based on the above testimony, Higgins opened the door to testimony concerning Lisa Higgins's character for violence. *Armstrong,* 718 S.W.2d at 695; *Arthur,* 339 S.W.2d at 539. At this point, the State became entitled to offer evidence of Lisa Higgins's character for peacefulness. Accordingly, this point of error is overruled.

By his final point of error, Higgins asserts that the trial court erred in allowing speculative testimony. The Texas Rules of Criminal Evidence provide that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Tex. R.Crim.Evid. 602; *see Strickland Transportation Co. v. Ingram,* 403 S.W.2d 192, 195 (Tex.Civ.App.—Texarkana 1966, writ dism'd) (stating that "[p]erception of fact by the senses of the witness, that is, firsthand knowledge, is a fundamental qualification of testimonial competency").

■ Higgins first complains of testimony by Christy Graves that she had seen Lisa Higgins with injuries on previous occasions. Specifically, Graves testified that she had seen Lisa Higgins when "her lip was busted. She had a black eye, and she had a hand print around her neck where she had been choked ... and she was bald-headed, where [David Higgins] had pulled a bunch of her hair out."

The above testimony about Lisa Higgins's injuries was admissible under Rule 602 because they are based upon her own personal observations of Lisa Higgins on the date in question. Higgins's brief does not complain about her testimony that he injured Lisa Higgins, but only about Lisa Higgins's injuries. Because this testimony was based upon her personal knowledge and observations, it was admissible under Rule 602.

■ The State also correctly contends that Higgins's objection was untimely because it did not come until after the State had asked another question concerning Lisa Higgins's demeanor on these previous occasions. An objection must be timely to preserve error on appeal. Tex.R.Crim.Evid. 103(a)(1). A timely objection is one that is made at the earliest possible opportunity, or as soon as the grounds for the objection become apparent. *See* Tex.R.App.P. 52(a); *Penry v. State,* 903 S.W.2d 715, 763 (Tex. Crim.App.), *cert. denied,* — U.S. —, 116

S.Ct. 480, 133 L.Ed.2d 408 (1995). At the latest, Higgins's objection should have been raised after Graves answered the question.

Higgins next complains about the speculative nature of the testimony of Susan Renee Wharton, Lisa Higgins's sister. Wharton testified that Lisa Higgins came to her home and she saw "markings on [Higgins] where she had a busted lip ... black eyes ... marks on her neck, ... bruises all down her back and ... bruises on her arms." Wharton also testified that she saw Higgins get verbally abusive with Lisa Higgins.

Higgins complains that this testimony is speculative. Higgins did not object, however, during this testimony. A failure to object when evidence is offered waives evidentiary complaints on appeal. *Phillips v. State,* 511 S.W.2d 22, 28 (Tex.Crim.App.1974); *see* TEX. R.CRIM.EVID. 103(a)(1). Thus, Higgins has waived this argument on appeal.

Even if Higgins had made a timely objection on this basis, however, the above testimony is admissible because it is based upon the personal observations of Wharton. See TEX.R.CRIM.EVID. 602. Accordingly, this point of error is overruled.

The judgment of the trial court is affirmed.