**Affirmed and Opinion filed December 15, 2015.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-15-00155-CR**
**NO. 14-15-00156-CR**
**NO. 14-15-00157-CR**
**NO. 14-15-00158-CR**

---

**LARRY  TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1385626, 1385627**

---

## O P I N I O N

Appellant Larry Torres was charged with unlawful possession of a firearm and possession of a controlled substance with intent to deliver. *See* Tex. Penal Code Ann. § 46.04(a) (Vernon 2011) (unlawful possession of a firearm); Tex. Health & Safety Code Ann. § 481.112(d) (Vernon 2010) (possession of a

controlled substance with intent to deliver). Appellant filed a pre-trial motion to suppress testimony and evidence, which was denied after a hearing.

In five issues, appellant contends that the trial court abused its discretion by denying his motion to suppress. We affirm.

## BACKGROUND

Police officers responded to a call regarding a suspicious vehicle shortly after 6:00 a.m. on April 27, 2013. Deputy Salazar, the first to arrive at the scene, observed appellant's vehicle parked in the street with the driver's door open. Salazar approached the vehicle and found appellant asleep in the driver's seat. Salazar attempted to wake appellant by shaking his leg, but appellant did not immediately wake up.

Deputy Davis arrived minutes after Salazar, and together they shook appellant. Appellant "finally came to, was real groggy, eyes red, didn't know what was going on." The deputies testified that appellant was somewhat responsive and answered questions slowly, but appeared to understand the questions he was being asked.

The deputies ran a check on appellant's driver's license and learned that appellant was sleeping in his own vehicle, which was parked in front of his residence. The check also revealed that appellant had an outstanding warrant in California from 1987 for a drug violation.

Salazar asked appellant if there was anything illegal in the vehicle. Appellant responded that there was not, but Salazar observed appellant stare at the driver's door pocket area as he answered. Believing appellant might be hiding something illegal, Salazar and Davis asked appellant to exit the vehicle. Once outside the vehicle, Davis patted appellant down to make sure he did not have any

weapons and Salazar requested appellant's consent to search the vehicle. It is unclear from the record whether the pat-down or the request for consent to search came first. Salazar asked three times if he could search the vehicle, and appellant responded "yes" three times. Appellant was not in handcuffs or otherwise restrained when he was asked for consent to search.

The deputies asked appellant to stand by the back of the car while they searched the car's interior. While Salazar and Davis were searching the vehicle, Officer Barron arrived at the scene and began questioning appellant. Barron noted that appellant "kept falling asleep while he was standing up and losing his balance." Barron said that appellant appeared to be "more than just a normal sleepy."

Salazar and Davis did not find anything illegal in their search of the vehicle's interior. As they moved toward the trunk, Barron noted appellant's demeanor change. Appellant became alert, began pacing around, and started to move toward the trunk. Barron then detained appellant for safety reasons and patted him down. Barron felt a hard object in appellant's pocket. When he asked appellant what it was, appellant responded that he did not know but invited Barron to take it out and look. The object was revealed to be a set of keys. Appellant denied ownership of the keys. Because appellant would not calm down, Barron handcuffed him at that time.

During his search of the trunk Salazar located a small lockbox; appellant denied ownership. Salazar used the keys Barron found in appellant's pocket to open the lockbox. Inside was a pistol, individual packages with a crystal-like substance, a scale, and a metal spoon. Barron and Salazar stated that appellant never objected to the search of the vehicle or otherwise revoked his consent at any time. Appellant disputed this testimony during the hearing on his motion to

3

suppress, contending that he would not have given consent to search the vehicle because he knew he had illegal items in the lockbox. Appellant contended he told the officers that they needed a warrant when they started searching the trunk. However, appellant also testified that he could not remember whether he gave consent for the search, and admitted that the officers could be telling the truth.

After Salazar opened the lockbox, Barron placed appellant in the back seat of his police vehicle. Appellant immediately fell asleep, and remained asleep until they arrived at the police station.

Appellant filed a pre-trial motion to suppress all evidence seized and to suppress any officers' testimony regarding appellant's detention or arrest. The trial court held a hearing on the motion outside the jury's presence. Salazar, Barron, and appellant testified at the hearing. The trial court denied appellant's motion to suppress at the conclusion of the hearing. The court did not make written findings of fact, but made the following limited findings on the record:

> The Court will make the following findings: As Officer Salazar approached the car, the car was off but in the street and regardless of what Officer Salazar thought was going on, [appellant] could have been arrested for public intoxication. Officer Salazar and his accompanying deputies asked if they could search the car; and while the defendant testified I believe truthfully, by his own admission the defendant did not recall whether he had given consent or not.
>
> The Court finds Officer Salazar and Officer Barron's testimony to be credible and reliable.

After his motion to suppress was denied, appellant pleaded guilty to both charges. The trial court sentenced him to 15 years' confinement for unlawfully possessing a weapon as a felon and 25 years' confinement for possession of methamphetamine with intent to deliver, with the sentences to run concurrently. Appellant timely appealed.

## STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress, we review for an abuse of discretion and overturn the trial court's ruling only if it lies outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We give almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness. *Id.* at 922-23. We review pure questions of law and mixed questions that do not depend on credibility determinations *de novo*. *Id.* at 923.

We view the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). If the trial court makes no explicit findings of fact, we imply fact findings to support the court's ruling when the evidence supports the implied findings. *Gutierrez*, 221 S.W.3d at 687. If the trial court's decision is correct on any theory of law applicable to the case, its decision will be sustained. *Ross*, 32 S.W.3d at 855-56.

## ANALYSIS

Appellant contends in five issues that the trial court abused its discretion by denying his motion to suppress. In his first three issues, appellant contends that evidence and testimony was inadmissible because it was the result of an illegal detention. In his fourth issue, appellant contends the trial court erred in finding Salazar had probable cause to arrest appellant for public intoxication. In his fifth issue, appellant contends the State failed to prove by clear and convincing evidence that appellant's consent to search the vehicle was voluntary. We address the fifth issue first.

## I.    Voluntariness of Consent

Appellant contends that the trial court abused its discretion in denying his motion to suppress the evidence obtained from the lockbox because the State failed to prove by clear and convincing evidence that appellant voluntarily consented to the search of his vehicle.

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). For the consent to be valid, it must be voluntary and "not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). The ultimate question is whether the defendant's will was overborne and his capacity for self-determination critically impaired such that the consent to search must have been involuntary. *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). The State is required to prove the voluntariness of a defendant's consent by clear and convincing evidence. *Carmouche*, 10 S.W.3d at 331. The voluntariness of a consent to search is a question of fact to be determined from all the circumstances. *Id.*

Salazar testified at the hearing on the motion to suppress that he asked appellant if he could search the "entire car" three separate times, and appellant responded "Yes" each time. Salazar testified that no officer threatened or otherwise coerced appellant into consenting to the search. Appellant was not handcuffed or placed in the back of a patrol car at the time he gave his consent to the search. Appellant's movement was not restricted when he was asked for permission to search, and the officers did not have their weapons drawn. Both

Salazar and Barron testified that appellant never rescinded his consent to search, even as they began to search the trunk and open the lockbox.

Appellant did not contradict the officers' testimony; instead, he testified that, knowing what he had in his trunk, he would not have given consent to search. Appellant admitted, however, that he did not remember whether he consented to the search and acknowledged that the officers could be telling the truth. The trial court, as the sole judge of the witnesses' credibility, was free to believe Salazar's testimony that appellant consented and to disbelieve appellant's contradictory statement that he would not have consented to the search. *See Ross*, 32 S.W.3d at 855.

Appellant further contends that his lack of sleep left him incapable of voluntarily consenting. Appellant testified during the hearing that he "hadn't slept in five days" before he fell asleep in his car where the officers found him. The officers did not dispute that appellant appeared very tired. They testified that appellant "kept falling asleep while he was standing up," that "it was more than just a normal sleepy," and that appellant initially did not know what was going on or where he was. However, Salazar testified that appellant, though groggy and talking slowly, "definitely" appeared to understand Salazar's questions. Salazar also testified that appellant consented to a search of his vehicle three separate times. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court could reasonably have concluded that appellant voluntarily consented to the search of his vehicle despite his apparent exhaustion.[1] *See*

---

[1] We note that appellant's consent to search the vehicle extended to the lockbox in appellant's trunk to which appellant had provided the key. *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (general consent to search vehicle included consent to search containers within that vehicle which might contain drugs); *United States v. Jones*, 356 F.3d 529, 534 (4th Cir. 2004) (defendant's express consent to search duffle bag extended to locked metal box inside the bag); *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992) (consent to search warehouse

*Whitmire v. State*, 183 S.W.3d 522, 528 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("Even had the court below believed appellant had been sleep deprived, such deprivation would not be enough to warrant suppression [of appellant's confession]. . . . Here, lack of sleep alone is simply not a factor to outweigh all others."); *cf. United States v. Sledge*, 546 F.2d 1120, 1121-22 (4th Cir. 1977) (defendant's claim that he was "high" due to intravenous injection of heroin and preludin less than three hours before confessing did not render confession involuntary in light of police testimony that defendant was coherent); *King v. State*, 585 S.W.2d 720, 722 (Tex. Crim. App. [Panel Op.] 1979) (appellant's contention that his confession was involuntary due to being "high" on heroin was "rendered moot by findings subsequently made by the trial court, that appellant was . . . not under the influence of narcotic drugs when he made the statement"); *Higgins v. State*, 924 S.W.2d 739, 743-45 (Tex. App.—Texarkana 1996, pet. ref'd) (where officers testified that defendant appeared to be drunk but there was no evidence of police coercion, defendant's statement was not rendered involuntary due to his intoxication).

Additionally, appellant requests that we consider the absence of written consent to a search — when obtaining written consent admittedly would not have been onerous — as a factor against the existence of clear and convincing evidence of consent. We decline to do so. It is well established that a valid consent to search may be oral. *Manzi v. State*, 56 S.W.3d 710, 719 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 88 S.W.3d 240 (Tex. Crim. App. 2002).

---

included consent to open locked containers inside); *Phillips v. State*, No. 14-11-00415-CR, 2012 WL 4788388, at *11 (Tex. App.—Houston [14th Dist.] Oct. 9, 2012, no pet.) (mem. op., not designated for publication) (consent to search residence included consent to search locked safe that defendant opened).

Based on the foregoing, we conclude that the trial court did not abuse its discretion in finding that clear and convincing evidence demonstrated appellant's voluntary consent to the search of his vehicle. Appellant's fifth issue is overruled.

## II. Legality of Investigative Detention

In his first, second, and third issues, appellant contends that the trial court abused its discretion by denying appellant's motion to suppress: (1) Salazar's testimony regarding appellant's oral consent to search the vehicle; (2) the evidence seized from the lockbox; and (3) Barron's testimony regarding appellant's actions when the trunk was opened. Appellant argues that the cited evidence and testimony was the "fruit" of an illegal detention.

There are three distinct types of interactions between law enforcement officers and citizens: (1) consensual encounters; (2) investigatory detentions; and (3) arrests. *State v. Woodard*, 341 S.W.3d 404, 410-11 (Tex. Crim. App. 2011).

A consensual encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). Consensual police-citizen encounters do not implicate Fourth Amendment protections. *Woodard*, 341 S.W.3d at 411.

An investigative detention occurs when a citizen yields to the police officer's show of authority under a reasonable belief that the citizen is not free to leave. *Crain*, 315 S.W.3d at 49. Examples of circumstances that might indicate that the interaction is more than a consensual encounter include the threatening presence of several officers; display of a weapon by an officer; some physical touching of the citizen; or use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* at 49-50. When

9

there is a detention, courts must decide whether the detaining officer had a reasonable suspicion that the citizen is, has been, or soon will be engaged in criminal activity. *Woodard*, 341 S.W.3d at 411.

Appellant, relying on *Wade v. State*, 422 S.W.3d 661 (Tex. Crim. App. 2013), contends that he was subject to an illegal investigative detention when the officers asked him to step out of his vehicle and proceeded to frisk him. In *Wade*, the Court of Criminal Appeals stated that "police may not escalate a consensual encounter into a protective frisk without reasonable suspicion that the person (1) has committed, is committing, or is about to commit a criminal offense *and* (2) is armed and dangerous." *Id.* at 669 (emphasis in original). Appellant contends that he was detained based solely on the fact that he glanced toward the driver's door pocket when asked if there were anything illegal in the vehicle, which appellant contends was not sufficient probable cause.

We agree with appellant that he was detained once the officers frisked him. *See id.* at 670 ("We agree with the State that appellant was not 'seized' until he complied with Warden Campbell's order to get out of his truck for a frisk."). Appellant contends no probable cause existed for the detention; however, probable cause was not required. Rather, an investigative detention — which includes a protective frisk — requires only that the officers had reasonable suspicion. *See id.* at 668-70. Reasonable suspicion requires "that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime." *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992)). A reasonable-suspicion determination is made by considering the totality of the circumstances. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005).

10

The totality of the circumstances here supports a finding that the officers had reasonable suspicion to detain appellant. Police received two 911 calls from a concerned neighbor reporting a suspicious vehicle. The caller noted that the driver was "passed out" in his vehicle with his driver's door "wide open." The caller believed appellant might be intoxicated and stated, "if he takes off, he's gonna kill somebody." When the deputies arrived at the scene, they found appellant asleep with his driver's door open and his foot resting in the door frame. After difficulty awakening appellant, the deputies observed that appellant was abnormally tired and that he had trouble staying awake. Upon running his driver's license, the deputies learned that appellant had an outstanding warrant in California for a drug violation.[2] When Salazar asked appellant if he had anything illegal in the vehicle, appellant looked at the driver's door pocket as he replied "No." Salazar asked appellant if he were sure there was nothing illegal in the vehicle, and appellant "just kept looking at the driver [sic] door." Based on his experience, the officer believed appellant's glances toward the driver's door pocket to be an indicator of illegal activity.

When viewed in conjunction, all of the above-mentioned circumstances support a finding that the officers had reasonable suspicion to believe "that there

---

[2] It was apparently later determined that California was not seeking extradition on the warrant — a fact that Salazar testified he was not aware of at the time of the detention. Accordingly, because Salazar was unaware that California was not seeking extradition, the existence of the outstanding warrant was a viable factor to consider in determining whether reasonable suspicion existed for the detention. *See* Tex. Code Crim. Pro. Ann. art. 38.23(b) (Vernon 2005); *cf. Herring v. United States*, 555 U.S. 135, 137 (2009) (where officers performed search incident to arrest premised on a warrant later determined to have previously been withdrawn, evidence seized was not subject to exclusionary rule because no bad faith existed on part of police); *State v. Pierce*, No. 05-07-00828-CR, 2008 WL 4075031, at *3 (Tex. App.— Dallas Sept. 4, 2008, no pet.) (not designated for publication) ("Although Pierce's license was valid and the car was not stolen, Spano learned that Pierce had an outstanding warrant out of California. However, once Spano learned that California did not want to extradite Pierce on the warrant, the traffic stop investigation was fully resolved.").

11

[was] something out of the ordinary occurring and some indication that the unusual activity [was] related to crime." *See Davis*, 847 S.W.2d at 244.

Because the officers had reasonable suspicion to detain appellant based on the totality of the circumstances, appellant was not subject to an illegal investigative detention. Accordingly, appellant's motion to suppress the evidence and testimony resulting from that detention was properly denied. Appellant's first, second, third issues are overruled.

## III. Trial Court's Finding Regarding Public Intoxication

In his fourth issue, appellant contends that the trial court erred in finding that Salazar had probable cause to arrest appellant for public intoxication. After the hearing on appellant's motion to suppress, the trial court found that "[a]s Officer Salazar approached the car, the car was off but in the street and regardless of what Officer Salazar thought was going on, [appellant] could have been arrested for public intoxication." Appellant contends there is no evidence in the record to support a finding that he was intoxicated. The State, for its part, does not urge that we affirm the trial court's ruling based on the public intoxication theory.

The trial court's ruling will be sustained if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003). This is true even if the trial court gives the wrong reason for the decision. *Id.* We have concluded above that reasonable suspicion existed for appellant's detention and that appellant voluntarily consented to a search of the vehicle. The evidence discovered during the search provided sufficient probable cause for appellant's arrest regardless of whether any evidence supported a finding that appellant was intoxicated. We overrule appellant's fourth issue.

12

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/    William J. Boyce
        Justice

Panel consists of Justices Boyce, Busby, and Brown.
Publish — Tex. R. App. P. 47.2(b).