

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0241-20

**SUZANNE ELIZABETH WEXLER, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FOURTEENTH COURT OF APPEALS
HARRIS COUNTY**

**WALKER, J., filed a dissenting opinion.**

## DISSENTING OPINION

The Court today concludes that Suzanne Elizabeth Wexler, Appellant, was not in custody and therefore her statements to police were not the product of a custodial interrogation. I cannot agree. Police commanded her to come out of the residence, placed her in the back of a police car, and told her they were going to find drugs and should just tell the police where the drugs were. Because her freedom of movement was significantly curtailed, and a reasonable person in Appellant's situation would not have felt free to leave, Appellant was in custody. The court of appeals got it wrong, and we should reverse. Because this Court does not, I respectfully dissent.

## I — Physically Deprived of Freedom of Action

As the Court points out, in *Dowthitt* we outlined four general situations when a person is in custody:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (citing *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)).

The Court determines that Appellant was not in custody because her detention was similar to a traffic stop, which usually does not constitute custody due to the nonthreatening and noncoercive aspect of the detention. *See Berkemer v. McCarty*, 468 U.S. 420, 436–40 (1984). That is, even though Appellant was detained, her detention was short, in a public setting, and she was not told that the detention would not be temporary. *See id.* at 441–42.

Those factors may be true, but the analogy to a run-of-the-mill traffic stop is inapt. Appellant was not waiting safely in her own vehicle during a noncoercive and nonthreatening traffic stop. Police showed up to the residence, commanded her over loudspeaker to leave the safety of the residence, and placed her in the back of a police car. As we noted in *Shiflet*, the kind of custody that occurs when a suspect is physically deprived of his freedom of action in any significant way (the first kind of custody listed in *Dowthitt*) can occur when a person is placed in a police vehicle and taken to the station house for questioning. *Shiflet*, 732 S.W.2d at 629. The same can be said for placing a person in a police vehicle and conducting the questioning right there, because there is "little

difference in questioning in the police station and interrogation in a police vehicle." *See Ancira v. State*, 516 S.W.2d 924, 926 (Tex. Crim. App. 1974).

Indeed, we have found custody even in traffic stops where the driver is placed in the back of the police car. *See Ragan v. State*, 642 S.W.2d 489 (Tex. Crim. App. 1982) (defendant stopped for traffic violations was in custody where officer, after observing several indications of intoxication, "asked" the defendant to have a seat in the police car, "assisted" him to the police car, and "helped" him sit in the back of the police car, after which the officer closed the door, sat in the driver's seat, and began asking questions); *Gonzales v. State*, 581 S.W.2d 690, 691 (Tex. Crim. App. [Panel Op.] 1979) (defendant, stopped for a traffic violation, was in custody where he was placed in the back of a police car and two officers were sitting in the car waiting for a radio report on the defendant's driver's license); *see also Higgins v. State*, 924 S.W.2d 739 (Tex. App.—Texarkana 1996, pet. ref'd) (defendant was in custody where he was placed in back of a police car; statement nevertheless admissible because it was spontaneously given and not the result of interrogation), *Port v. State*, 798 S.W.2d 839 (Tex. App.—Austin 1990, pet. ref'd) (defendant questioned while in back seat of police car was in custody; statement nevertheless admissible because *Miranda* rights were waived).

I agree with Justice Hassan's dissenting opinion below that placing a person in the back of a police car significantly impacts a person's freedom. *Wexler v. State*, 593 S.W.3d 772, 784–85 (Tex. App.—Houston [14th Dist.] 2019) (Hassan, J., dissenting) (citing *United States v. Blum*, 614 F.2d 537, 540 (6th Cir. 1980)). "While appellant was seated in the patrol car with the officer[] awaiting [the execution of the search warrant], it is inconceivable that [she] was free to leave if [she] had desired to do so." *Gonzales*, 581 S.W.2d at 691.

And she was not simply sitting in the car waiting for the search to conclude. The officer in

the car with her told her that they had a warrant to search the residence and they were going to eventually find the drugs.[1] This shows that Appellant was not free to leave. I would conclude that Appellant was in custody when she was placed in the back of a police car and her freedom of movement was significantly impacted. *Shiflet*, 732 S.W.2d at 629.

## II — Reasonable Person Would Not Feel Free to Leave

Additionally, the Court concludes that, because Appellant was not aware of the overwhelming police presence at the scene, she would not have believed that she was not free to leave. According to the Court, "the record does not show what Appellant saw or knew about the show of force arrayed against her." But the record does show.

Appellant was aware that police were, over a loudspeaker, commanding her to leave the residence.[2] When she did so, she was aware that multiple officers were present, because more than one officer detained her, and, as she was exiting the house, other officers were entering the house or had already entered it.[3] Furthermore, these officers were SWAT-like.[4] She was immediately detained and placed in the back of a police car,[5] and obviously she must have been aware that she was detained and placed in the back of a police car. Even if Appellant was not aware that one of the vehicles present was an armored one and she was not aware of exactly how many officers there were, the reasonable person would appreciate that a significant police force was there. This show of force,

---

[1] Rep. R. vol. 3, 58.

[2] Rep. R. vol. 3, 46.

[3] *Id.* at 46–51.

[4] *Id.* at 43.

[5] *Id.* at 47, 48–49.

that Appellant was aware of, weighs in favor of finding that a reasonable person would not have felt free to leave.

Finally, while Appellant was in the back of the police car, she was being questioned by a police officer, who told her either that:

> Hey, we have a search warrant. We're going to find the drugs. Just tell me where they are.[6]

or

> Hey, we have a search warrant. We're going to find the drugs in the house and any contraband. Just tell me where it is.[7]

or

> We have a search warrant. Tell me where the narcotics are. It will save us some time doing the search. We're going to find it no matter what.[8]

The majority downplays this as the "[posing] of a single question before any search took place," but even as a single question, the officer's statement clearly conveyed to Appellant that police were looking for drugs and that they believed she knew where the drugs were located. A reasonable person, after being placed in a police car, being told by a police officer that they have a warrant and are searching the residence for drugs, being told that they will find the drugs, and then being asked one question by that officer—"Where are the drugs?"—would feel like a suspect. While being a focus of the investigation is not itself determinative of being in custody, it is a relevant factor to a custody determination. *Meek v. State*, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990); *Dowthitt*, 931

---

[6] *Id.* at 52.

[7] *Id.*

[8] *Id.* at 58.

S.W.2d at 254. This factor, along with the other circumstances surrounding Appellant's questioning, weigh in favor of a conclusion that she would not feel free to leave.

### III — Conclusion

In short, the police made a show of force and commanded Appellant to leave the residence. Once she did so, the police placed her in a police vehicle, told her they were searching the residence for drugs, and wanted her to tell them where the drugs were. Any reasonable person in Appellant's position would not feel free to leave. This constitutes custody. I disagree with the Court's conclusion that it was not, and I respectfully dissent to the Court's decision to affirm the judgment of the court of appeals.

Filed: June 30, 2021
Publish