

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00052-CR

RUSSELL LEE BARTLEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-20-27563

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

Appellant, Russell Lee Bartley, was convicted by a Fannin County jury of aggravated sexual assault of a child and was sentenced to twenty-three and one-half years' incarceration. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B). The trial court also ordered Bartley to pay court costs of $290.00 and reimbursement fees of $315.00. On appeal, Bartley argues that the trial court erred in refusing to admit or limit relevant and material evidence and challenges the trial court's assessment of fees.

We find that error in excluding the complained of evidence is harmless. We also agree with Bartley that the time payment fee is premature and that court costs are not currently due. Accordingly, we modify the bill of costs and affirm the trial court's judgment.

## I.     Background

Bartley was indicted for the offense of continuous sexual abuse of a young child/children. *See* TEX. PENAL CODE. ANN. § 21.02 (Supp.). The indictment alleged that Bartley, a person over the age of seventeen, "commit[ted] two or more acts of sexual abuse against [NJ and/or SA[1]]," who were "younger than 14 years of age" at the time of the offense, during a period that was thirty days or more in duration.

In January of 2020, when NJ was in the first grade, she raised her hand while in class and told her teacher "across the room" that Bartley "kissed [her] tee tee." When the teacher spoke to NJ at her desk to understand what she meant, NJ informed her, "[Bartley] kissed me where I tee

---

[1]We use a pseudonym to refer to the children and describe witnesses and their relations in a manner to protect the identity of the children. *See* TEX. R. APP. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

2

tee" and "[l]icked where I tee tee," and she "pointed to her private area." At the time of her outcry, NJ lived with her mother, her siblings, and Bartley. NJ's mother alerted NJ's grandmother of what was alleged, and the next day, NJ's grandmother traveled to Texas, attended the Sexual Assault Nurse Examiner (SANE) examination with NJ and her mother, and after a discussion with NJ's mother, the grandmother took NJ back with her to Kansas. NJ has remained in her grandmother's care since that day. While in her grandmother's care, NJ began counseling "almost immediately." NJ's grandmother testified that NJ went to approximately six sessions and then went on an "as needed" basis. Almost two years after moving NJ from Texas to Kansas, NJ and her grandmother moved to Wyoming.

On cross-examination, NJ's grandmother testified that she had a long business relationship with NJ's counselor spanning twenty-five to thirty years. She also agreed that she had always been very involved in NJ's life, before and after the outcry. NJ's therapist, Jeri Stonestreet, who she began seeing after the outcry, indicated that NJ's grandmother was part of most, if not all, of NJ's therapy sessions. NJ's teacher also agreed that NJ's grandmother was heavily involved in NJ's care prior to the outcry, even attending "meet the teacher" night. NJ's teacher stated that NJ's parents were the first line of contact, but if they did not respond, the teacher would send a message to "[g]randma" and get an immediate reply.

NJ's grandmother testified that while living in Wyoming, she was "granted sole custody [of NJ] and a protection order against [Bartley]." She also agreed that she had been in communication with law enforcement and the investigators involved in the case relating to NJ's allegations against Bartley.

NJ testified that Bartley touched her private parts when she was seven years old. She explained that he used his tongue on her private parts and stated that "[i]t was weird and uncomfortable." She also testified to an instance where Bartley used his finger on her "middle part" and to an instance in the laundry room when "he said, [d]on't tell anyone, and he went [s]hh." She further stated that there was a separate incident that occurred outside when Bartley licked her "back part" while on a "flat, wooden trailer" in the yard. NJ stated that she told her mother about what had happened when she got home and that she recalls her mother rushing inside and hearing "yelling." NJ also told her first-grade teacher about it, which NJ stated was how they "got here today." NJ explained that at the time of trial, she did not recall the incidents, that she "kind of just, like, crossed [them] out in [her] mind, and [she] didn't remember where the scene was or kind of just forgot it." NJ testified that she did not remember all of the details but that she did remember that Bartley was "[l]icking" her. Prior to her testimony, NJ reviewed a recording of herself from shortly after her outcry where she discussed what had happened to her. She explained on cross-examination that, when she cannot remember things, the recording and her grandmother help her remember. NJ stated that she and her grandmother discussed coming to trial "probably every single day" and that her grandmother did not tell her what to say but told her "to answer [the attorneys'] questions."

During her forensic interview, NJ stated that Bartley "put his finger in her middle hole," which she explained "was the part that she pooped from." NJ also indicated that Bartley put his tongue on her vagina. During the forensic interview, NJ stated that Bartley also licked her bottom, and she expressed that he "could get sick" from her forgetting to "wipe." Mandi Bruso,

4

the forensic interviewer, stated that there was no confusion as to who the perpetrator was, that NJ always stated it was Bartley.

Bartley's father testified that he observed a normal relationship between NJ and Bartley. Bartley also testified on his own behalf and denied the allegations against him outright. He agreed that his defensive theory was that NJ's grandmother coached NJ to make those allegations against him, that NJ's grandmother had wanted custody of NJ and told her to make the outcry.[2] He testified that NJ's grandmother wanted to be involved in every aspect of NJ's life. NJ's mother also testified on behalf of the defense. She explained that her mother, NJ's grandmother, and NJ had always had a close relationship that she described as "[a]lmost uncomfortably" close. She explained that she and NJ were not able to establish a bond because of NJ's grandmother's interference. NJ's mother and Bartley met in December 2014. At that time, NJ and her mother were living with NJ's grandmother and step-grandfather. In October 2016, NJ's mother and Bartley decided to move to Texas, and NJ's mother explained that the reasons were twofold: because Bartley was offered a better paying job that would allow NJ's mother to become a stay-at-home mother and "[t]o get the children away from [her] mother and [her] stepfather." She further testified that Bartley worked in construction and would work six days a week and often anywhere from twelve- to eighteen-hour shifts. She was the primary caregiver of the children, and Bartley was rarely alone with the children because of his work schedule.

This appeal followed.

---

[2]While Bartley's issue on appeal relates specifically to the inability to introduce specific evidence to show the bias of NJ's grandmother, we note that the allegations against Bartley also included a second victim, SA, who testified at trial that Bartley touched her sexually when she was approximately ten years old and Bartley was approximately twenty years old. Bartley does not raise any issue on appeal related to those allegations.

5

## II. Exclusion of Evidence

In his first point of error, Bartley argues that the trial court erred in refusing to admit "relevant and material evidence vital to [his] case."

### A. Standard of Review and Applicable Law

"We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement." *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016) (plurality op.) (footnote omitted) (citations omitted). In addition, *Henley* states, "Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* at 83 (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)).

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination[,]' because that is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Johnson v. State*, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014) (alteration in original) (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)).

> A defendant's right to present evidence relevant to a valid justification defense should not be confused with a defendant's right to present his case-in-chief. A defendant has the right to put on his case-in-chief, but that right is not without limitations. A defendant does not have an unfettered right to present evidence that has no relevance. In citing to United States Supreme Court case law, this Court has held that "[a] defendant has a fundamental right to present

6

> evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule." Only relevant evidence is admissible, and the trial court judge has the discretion to exclude irrelevant evidence.

*Henley*, 493 S.W.3d at 83 (alteration in original) (footnote omitted) (quoting *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001)); *see* TEX. R. EVID. 402.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action "more or less probable than it would be without the evidence." TEX. R. EVID. 401. "Evidence does not need to prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving a fact of consequence." *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). "A 'fact of consequence' includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred." *Henley*, 493 S.W.3d at 84 (quoting *Rankin v. State*, 974 S.W.2d 707, 710 (Tex. Crim. App. 1996)). Although relevant evidence need not independently prove an element of the charged offense, it must not be "wholly unconnected to an elemental fact." *Id.* "An evidentiary fact that stands wholly unconnected to an elemental fact, however, is not a 'fact of consequence.'" *Id.* (quoting *Rankin*, 974 S.W.2d at 710). If proffered evidence influences no issue in the case, "then that evidence is irrelevant and thus inadmissible." *Id.*

A party may always attack a witness's credibility by cross-examination that tends to reveal "biases, prejudices, or ulterior motives" affecting the witness's testimony. *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *see Koehler v. State*, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984). The motive operating on a witness's state of mind while testifying is not a collateral matter.

7

"When the evidence shows bias or a motive for the witness to testify untruthfully, there is an exception to the prohibition on cross-examination or extrinsic evidence concerning a witness's specific instances of conduct." *Sparks v. State*, 943 S.W.2d 513, 517 (Tex. App.—Fort Worth 1997, pet. ref'd). As a part of the Sixth Amendment right to confrontation, a defendant must be accorded great latitude to show any fact that would tend to establish ill feeling, interest, bias, prejudice, or ulterior motives affecting the witness's testimony. *Davis*, 415 U.S. at 316–17; *Hurd v. State*, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987); *Sparks*, 943 S.W.2d at 517; *Gonzales v. State*, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd) (per curiam). "The Constitutional right of confrontation is violated when appropriate cross-examination is limited." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996) (plurality op.). "A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias[,] or interest for the witness to testify." *Id.* (citing *Lewis v. State*, 815 S.W.2d 560, 565 (Tex. Crim. App. 1991)).

### B.    Exclusion of Evidence was Harmless

On appeal, Bartley complains about the trial court's refusal to admit evidence related to NJ's grandmother's "denial of [NJ's mother's] disclosure of sexual abuse at the hands of her stepfather, . . . in 2016, the same year [Bartley] and [NJ's] mother moved out of state." Bartley contends that the trial court incorrectly excluded cross-examination into that area because the evidence went to the "bias, personal interest, and motives" of NJ's grandmother. Bartley contends that his "main theory" in this case was that NJ's grandmother "coached NJ as to the

allegations made and then seized upon NJ's allegations to achieve the goal she had since the day NJ was born, not to be 'grandma,' but to be 'mom.'"

Bartley argues that the exclusion of that evidence prevented him from establishing the bias, interest, and motive on the part of NJ's grandmother.[3]  Essentially, Bartley argues that NJ's mother reported to NJ's grandmother that her stepfather had sexually abused her when she was a child and NJ's grandmother did not believe the accusations were true.  Bartley sought to cross-examine NJ's grandmother regarding that information to rebut the State's presentation of NJ's grandmother as a "champion of all children, someone who would fight on behalf of any child alleging abuse."  When defense counsel sought to introduce the evidence at trial, the trial court denied the request stating, "The Court is not allowing it, and 412 doesn't allow you to go into anyone else's sexual history.  We're not going into that.  We're not going into everybody else's background.  We are focusing on this case."

Bartley asserts that the information he sought to cross-examine NJ's grandmother about would have allowed the jury to obtain a clearer image of what kind of person NJ's grandmother was and that the information related to an allegation of sexual abuse by NJ's mother of a different perpetrator was relevant to the case at bar because the State put NJ's grandmother forth as an advocate for all children.  We agree that the trial court erred in limiting Bartley's cross-examination.

---

[3]At the trial level, Bartley also argued that the evidence was admissible under an alternate perpetrator argument. That argument appears to be abandoned at the appellate level as Bartley's brief only mentions the alternate perpetrator in one sentence:  "After the State finished on direct examination, trial counsel again sought to introduce the alternate perpetrator theory—for the purpose of establishing bias, interest, and motive on the part of" NJ's grandmother.  Accordingly, we do not address any alternate perpetrator argument in this memorandum opinion.

9

We conclude, however, that the error was harmless. To determine whether the limitation of cross-examination is harmful,

> [f]irst, the reviewing court must assume the damaging potential of the cross-examination was fully realized. Second, with that assumption in mind, the error is reviewed in light of the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. Finally, the reviewing court determines whether the error was harmless beyond a reasonable doubt.

*Lerma v. State*, No. 03-96-00678-CR, 1998 WL 132946, at *8 (Tex. App.—Austin Mar. 26, 1998, pet. ref'd) (not designated for publication) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)); *see Carroll*, 916 S.W.2d at 497.

Considering the five factors, NJ's grandmother's testimony was important to the State, and the State emphasized it as such, but it was not essential. The jury heard testimony from NJ, NJ's teacher, NJ's therapist, the SANE nurse, and SA regarding the outcries and allegations of sexual abuse at the hands of Bartley. NJ's grandmother's testimony was somewhat cumulative as she discussed her relationship with NJ, NJ's living situation, and NJ generally—all of which was discussed by other witnesses as well, such as NJ's mother, NJ, and NJ's teacher and therapist. While Bartley could not discuss the outcry of abuse by NJ's mother to NJ's grandmother, Bartley was able to explore NJ's grandmother's bias on cross-examination through evidence of NJ's grandmother's closeness to NJ, her relationship with NJ's mother and Bartley, and her desires for the outcome of this case. The State's case against Bartley was strong, and even without the testimony of NJ's grandmother, the jury had sufficient evidence to convict.

10

After reviewing the entire record, we conclude that the limitation of the cross-examination was harmless error "beyond a reasonable doubt [and] did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a) (pertaining to constitutional error); *see Shelby v. State*, 819 S.W.2d 544, 551 (Tex. Crim. App. 1991). Bartley's first issue is overruled.

## III. Assessment of Fees

In his second, third, and fourth points of error, Bartley argues that there are errors in the trial court's judgment and bill of costs.[4]

### A. Modification of the Judgment

Bartley seeks a modification of the judgment to reflect that the reimbursement fees owed total $35.00, rather than the $315.00 currently listed in the judgment. The clerk's record contains two bills of costs, an itemized bill of costs from 2021 and a final bill of costs dated May 24, 2024. The 2021 bill of costs states that the reimbursement fees are $35.00, and the final bill of costs has a $315.00 reimbursement fee. In his appellate argument, Bartley states that it is "suspected that a data entry error during the drafting of the [final] Bill of Costs and Judgment is responsible" for the discrepancy. However, the 2021 itemized list contains fees that are listed "Per witness summoned" and "Assess on each Notice" indicating that the fees may be increased

---

[4]Citing *Dulin v. State*, 620 S.W.3d 129, 133 (Tex. Crim. App. 2021), the State argues that issues two through four are not ripe for our review but rather are "frozen" until the fees become due at a later date. Because Bartley is not challenging the payment date of the fees, but rather the assessment of fees themselves, we disagree with the State's contention. "Further, the record must reflect some factual basis to support the trial court's determination." *Hill v. State*, No. 06-12-00163-CR, 2013 WL 1750902, at *2 (Tex. App.—Texarkana Apr. 24, 2013, no pet.) (mem. op., not designated for publication); *see Thomas v. State*, 445 S.W.3d 288, 292 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Sufficient evidence must support an assessment of costs in a bill of costs or in a judgment."). A certified bill of costs imposes an obligation upon a criminal defendant to pay court costs, regardless of whether that bill is incorporated by reference into the written judgment. *Johnson v. State*, 389 S.W.3d 513, 516 (Tex. App.—Houston [14th Dist.] 2012, pet. granted) (concluding that issue was ripe for review because judgment ordered payment of costs "and could be acted upon in an attempt to collect the specified amount").

depending on the number of witnesses summoned or the number of times a notice to appear was issued. *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3) (Supp.) ("A defendant convicted of a felony or a misdemeanor shall pay . . . $5 for summoning a witness."); TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(1) (Supp.) ("A defendant convicted of a felony or a misdemeanor shall pay . . . $5 for issuing a written notice to appear in court following the defendant's violation of a . . . penal law of this state . . . .").

We note that the record contains several subpoenas commanding a peace officer of the state to summon twenty-four witnesses, totaling $120.00. The record also reflects a written notice to appear, totaling $5.00, and a $5.00 fee to summon a jury. Accordingly, in addition to the $35.00 in reimbursement fees noted by Bartley from the initial bill of costs, the record supports an additional $130.00 in reimbursement fees. As a result, we modify the trial court's judgment and the final bill of costs by changing the assessment for reimbursement fees from $315.00 to $165.00.

### B.     Time Payment Fee

In his third point of error, Bartley argues that the time payment fee is premature. The Texas Court of Criminal Appeals has concluded that a time payment fee like the one imposed here "must indeed be struck for being prematurely assessed because a defendant's appeal suspends the duty to pay court costs and therefore suspends the running of the clock for the purposes of the time payment fee." *Dulin*, 620 S.W.3d at 129. "As a consequence, even now, assessment of the time payment fee in this case would be premature because appellate proceedings are still pending." *Id.* Pursuant to *Dulin*, we strike the time payment fee "in [its]

12

entirety, without prejudice to [it] being assessed later if, more than 30 days after the issuance of the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution" owed. *Id.* at 133. Accordingly, we sustain Bartley's third point of error and strike the time payment fee "without prejudice to [it] being assessed later if, more than 30 days" elapses without payment of court costs after they become due. *Id.*; *Mitchell v. State*, 653 S.W.3d 295, 298 (Tex. App.—Texarkana 2022, no pet.).

### C.  Immediate Payment of Costs

In his fourth and final point of error, Bartley notes that the judgment orders payment of court costs on release of confinement, but that the bill of costs orders immediate payment of court costs. The judgment reflects that costs will be imposed upon the release of Bartley from confinement. *See* TEX. CODE CRIM. PROC. ANN. art. 42.15(b)(2) (Supp.) (allowing the trial court to order payments of costs at a later date). As a result, we sustain Bartley's last point and modify the bill of costs by including a statement showing that court costs are not due until Bartley is released from confinement.

## IV. Conclusion

We modify the trial court's judgment and the final bill of costs by changing the assessment for reimbursement fees from \$315.00 to \$165.00 and by deleting the time payment fee. We further modify the final bill of costs by adding a statement showing that court costs are not due until Bartley is released from confinement. As modified, we affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     February 21, 2025
Date Decided:      March 26, 2025

Do Not Publish

14